Ira Spiro (Cal. State Bar No. 67641)
e-mail: ira@spiromoss.com
H. Scott Leviant (Cal. State Bar No. 200834)
e-mail: scott@spiromoss.com
Linh Hua (Cal. State Bar No. 247419)
e-mail: linh@spiromoss.com
**SPIRO MOSS LLP**
11377 W. Olympic Blvd., 5th Floor
Los Angeles, California 90064-1683
Telephone:  (310) 235-2468
Facsimile:   (310) 235-2456

Attorneys for Plaintiffs
EVE NERCIA GILLINGS, PATRICE HAYES,
PHILLIP BOND, and RHANDI WALTERS

[Additional Counsel listed on following page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVE NERCIA GILLINGS, et al., | Case No.: SACV 10-5565-AG (RNBx) |
| Plaintiffs, | [Consolidated for limited purposes with:  SACV 11-00735-AG (RNBx)] |
| vs. | |
| TIME WARNER CABLE, LLC, et al., | [Hon.  Andrew J. Guilford] |
| Defendants. | CLASS ACTION |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION** |
| | Date:          March 26, 2012<br>Time:          10:00 a.m.<br>Place:          Courtroom 10D |
| | Date Action Filed: June 25, 2010<br>Date Removed:     July 27, 2010<br>Trial Date:         May 15, 2012 |

SPIRO MOSS LLP

Marc H. Phelps (SBN 237036)
**THE PHELPS LAW GROUP**
2030 Main Street, Suite 1300
Irvine, CA  92614
Telephone:  (949) 260-4735
Facsimile:   (949) 260-4754
marchannaphelps@gmail.com

Roger R. Carter (SBN 140196)
**THE CARTER LAW FIRM**
2030 Main Street, Suite 1300
Irvine, CA  92614
Telephone:  (949) 260-4737
Facsimile:   (949) 260-4754
roger@carterlawfirm.net

Scott B. Cooper (SBN 174520)
**THE COOPER LAW FIRM, P.C.**
2030 Main Street, Suite 1300
Irvine, CA  92614
Telephone:  (949) 724-9200
Facsimile:   (949) 724-9255
scott@cooper-firm.com

Attorneys for Plaintiff
Melanie Gonzales

SPIRO MOSS LLP

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

1     **TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF**

2 **RECORD:**

3     PLEASE TAKE NOTICE that on March 26, 2012 at 10:00 a.m., or as soon

4 thereafter as may be heard, in Courtroom 10D of the above-entitled Court, located at

5 411 W. Fourth Street, Santa Ana, California, 92701, Plaintiffs in Case No. CV 10-

6 5565-AG (RNBx) (the "Gillings" matter) and Case No. SACV 11-0735-AG (RNBx)

7 (the "Gonzales matter") will and hereby do move this Court, pursuant to Federal Rules

8 of Civil Procedure ("FRCP") 23(c)(1) for an order:

9     1. certifying, as to the first claim for relief in the Gillings Second Amended

10        Complaint ("Gillings SAC") and first and second claims for relief in the

11        Gonzales Complaint ("Gonzales Complaint") (failure to pay wages,

12        minimum and overtime), a plaintiff class ("the Class") defined as follows:

13        "All persons employed as hourly-paid employees by any Defendant in any

14        call center in California at any time on or after June 25, 2006, whose duties

15        during that period of time included speaking with customers by telephone

16        and using a computer in connection with the telephone calls.  The job titles

17        of the class members include but are not limited to: 'sales

18        representative/agent;' 'customer service representative/agent'; and

19        'mentor'."

20     2. certifying, as to the third claim for relief in the Gillings SAC and the fifth

21        claim for relief in the Gonzales Complaint (failure to furnish accurate

22        itemized wage statements), a plaintiff class ("the Wage Statement Sub-

23        Class") defined as follows: "All persons employed as hourly-paid employees

24        by any Defendant in any call center in California at any time on or after June

25        25, 2009, who received wage statements and whose duties during that period

26        of time included speaking with customers by telephone and using a

27        computer in connection with the telephone calls.  The job titles of the class

28

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SPIRO MOSS LLP

1    members include but are not limited to: 'sales representative/agent;'

2    'customer service representative/agent'; and 'mentor'."

3. certifying, as to the fifth claim for relief in the Gillings SAC and the eighth claim for relief in the Gonzales Complaint (violation of California's unfair competition law, predicated on the other violations alleged in the complaints), a plaintiff class ("the Class") defined as follows: "All persons employed as hourly-paid employees by any Defendant in any call center in California at any time on or after June 25, 2006, whose duties during that period of time included speaking with customers by telephone and using a computer in connection with the telephone calls.  The job titles of the class members include but are not limited to: 'sales representative/agent;' 'customer service representative/agent'; and 'mentor'."

4. appointing EVE NERCIA GILLINGS, PATRICE HAYES, PHILLIP BOND, and RHANDI WALTERS of the Gillings matter and MELANIE GONZALES of the Gonzales matter as representatives of the Class, the Wage Statement Sub-Class, and any other sub-class the Court may devise; and,

5. appointing H. Scott Leviant and Ira Spiro of Spiro Moss LLP, Marc Phelps of The Phelps Law Group, Scott B. Cooper of The Cooper Law Firm, P.C. and Roger R. Carter of The Carter Law Firm as Class Counsel pursuant to FRCP 23(g).

This motion is brought on the grounds that this action properly may be certified as a class action under FRCP Rule 23(a) in that:  (a) the Class and any Subclass are so numerous (numbering in the many hundreds or thousands) that joinder of all members of the Class in this action is impracticable; (b) there are questions of law and fact which are common to the members of the Class; (c) the claims of Plaintiffs are typical of the claims of the members of the Class they seek to represent; and (d) Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

This motion is brought on the further grounds that the Class properly may be certified under FRCP 23(b)(3) in that: (a) the questions of law and fact common to the members of the Class predominate over the questions of law and fact, if any, which affect only individual members of the Class; and (b) a class action is superior to any other available method for the fair and efficient adjudication of the claims for relief asserted in this action.

This motion is based upon this Notice, the Memorandum of Points and Authorities filed in support thereof, the declarations filed herewith as well as the exhibits thereto, the pleadings and records on file in this action, and such additional oral argument and documentary evidence as may be presented at the hearing on this motion.

This motion is made following repeated conferences of counsel pursuant to Local Rule 7-3 of the U.S. Central District Local Rules which took place over multiple conferences of counsel held between August 2011 and December 2011.

Dated: February 13, 2012                    Respectfully submitted,

                                            SPIRO MOSS LLP


                                      By: _____
                                            H. Scott Leviant

                                            Marc Phelps
                                            The Phelps Law Group

                                            Scott B. Cooper
                                            The Cooper Law Firm, P.C.

                                            Roger R. Carter
                                            The Carter Law Firm

                                            Attorneys for Plaintiffs

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ........................................................................ iv

I.    INTRODUCTION ................................................................................ 1

II.   THE CLASS PLAINTIFFS SEEK TO CERTIFY ............................... 1

DISCUSSION ................................................................................................ 2

III.  CERTIFICATION OF THE DEFINED CLASS OF CALL CENTER

      EMPLOYEES IS APPROPRIATE UNDER FED. R. CIV. P. 23 ..................... 2

      A.  The Standards Governing Rule 23 Motions. .................................. 2

      B.  This Case Meets the Requirements of Fed. R. Civ. P. 23(a). ..................... 4

          1.  The Proposed Class Is Sufficiently Numerous To Satisfy The

              "Numerosity" Requisite Of Rule 23(a). ................................. 4

          2.  Common Issues of Law and Fact Exist, Satisfying The

              Requirements Of Rule 23(a)(2). ........................................... 5

          3.  Plaintiffs' Claims Are Typical Of The Class They Seek To

              Represent, Satisfying Rule 23(a)(3). ..................................... 6

          4.  The Proposed Class Representatives And Their Counsel Will

              Adequately Represent The Interests Of The Class. ............................ 7

              a)  Plaintiffs, As They Have Already Demonstrated Their

                  Willingness To Do, Will Fairly, Vigorously And

                  Adequately Represent The Interests Of The Class.............. 8

              b)  Plaintiffs Propose Spiro Moss LLP, The Phelps Law

                  Group, The Cooper Law Firm, P.C. and The Carter Law

                  Firm As Class Counsel. ................................................. 9

      C.  Certification Under Rule 23(b)(3) is Appropriate......................... 9

          1.  Common Questions of Law or Fact Predominate............................... 9

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SPIRO MOSS LLP

a)    Common Issue of Law:  Rounding is unlawful when it results, over a period of time, in failure to compensate employees properly for all the time actually worked. ...... 11

b)    Common Issues of Fact:  Defendants' uniform practice of rounding underpaid the class nearly $300,000. .................. 12

c)    Common Issue of Law:  Employees must be paid for all time worked. ............................................................. 16

d)    Common Issue of Fact:  Defendants did not compensate Class members for time spent preparing workstations. ... 17

e)    Derivative Labor Code violations and the Unfair Competition Law raise no predominance issues. .............. 18

f)    Individualized damages do not destroy predominance, particularly when, as here, damages can be calculated with precision from Defendants' electronic records. ......... 18

2.    Class-Action Treatment Is Superior To Individual Actions. ............. 19

    a)    Based On The Nature And Size Of The Claims, Class Members Have Little Incentive To Bring Individual Actions. ....................................................................... 19

    b)    The Only Other Identical Action (Gonzales) Has Been Related to Gillings for the purposes of Class Certification. 21

    c)    Concentrating Class Claims in a Single Forum Is Desirable. .................................................................. 22

    d)    No Significant Management Difficulties Are Present. ...... 22

    e)    Insulation From Fear of Retaliation by the Employer Renders Wage and Hour Class Actions Superior. ............. 23

    f)    Uncertainty About Legal Rights Would Deter Individual Actions, Rendering Class Resolution Superior. .................. 24

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

1

g)    Class Actions Provide For Uniform Enforcement Of

Employees' Rights. ...................................................... 24

IV.  CONCLUSION ................................................................ 25

SPIRO MOSS LLP

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

1

TABLE OF AUTHORITIES

2

3    **FEDERAL DECISIONAL AUTHORITY**

4    *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686 (9th Cir. 1977), *cert.*

5        *denied* 434 U.S. 829 (1977)..........................................................................2

6    *Austin v. Amazon.Com, Inc.*, 2010 WL 1875811 (W.D. Wash. 2010)........................ 11

7    *Barragan v. Evanger's Dog and Cat Food Co., Inc.*, 259 F.R.D. 330 (N.D. Ill. 2009)

8        ............................................................................................................... 10

9    *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976) ..3,

10       4, 19, 22

11   *Bricker v. Planet Hollywood New York, L.P.*, 2009 WL 2603149 (S.D. N.Y. 2009).. 10

12   *Cervantez v. Celestica Corp.*, 253 F.R.D. 562 (C.D. Cal. 2008).................................. 12

13   *Charlebois v. Angels Baseball, LP*, SACV 10-0853 DOC ANX, 2011 WL 2610122

14       (C.D. Cal. June 30, 2011) ...................................................................................4

15   *Dominguez v. Schwarzenegger*, 270 F.R.D. 477 (N.D. Cal. 2010) ...............................3

16   *duPonte Glore Forgan, Inc. v. American Telephone and Telegraph Co.*, 69 F.R.D. 481

17       (S.D.N.Y. 1975) .................................................................................................. 20

18   *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974) ............................................... 3, 20

19   *Eldred v. Comforce Corp.*, 2010 WL 812698 (N.D. N.Y. 2010) ................................. 10

20   *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ............................ 2, 3, 4

21   *Fisher v. Michigan Bell Telephone Co.*, 665 F.Supp.2d 819 (E.D. Mich. 2009)......... 12

22   *Flott v. Hair Salons, Inc.*, 2010 WL 5093923 (D. Neb. 2010) .................................... 12

23   *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir.1997).................4

24   *General Tel. Co. v. EEOC*, 446 U.S. 318 (1980) ...................................................... 4, 8

25   *Gil v. Solectron Corp..* 2009 WL 88346 (N.D. Cal. 2009)........................................... 12

26   *Haley v. Medtronic, Inc.*, 169 F.R.D. 643 (C.D. Cal. 1996)..................................... 2, 5

27   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)................................... passim

28   *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ................................. 3, 7

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SPIRO MOSS LLP

*Hansen v. Ticket Track, Inc.*, 213 F.R.D. 412 (W.D. Wash. 2003) ................................. 5

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335 (9th Cir. 1982) .................................................................................................. 3

*In re MDC Holdings Securities Litigation*, 754 F. Supp. 785 (S.D. Cal. 1990) .......... 19

*In re Mego Fin. Corp. Sec. Litig.* 213 F.3d 454 (9th Cir. 2000) ..................................... 7

*Johns v. Bayer Corp.*, 09CV1935 AJB POR, 2012 WL 368032 (S.D. Cal. Feb. 3, 2012) ......................................................................................................................... 3

*Jordan v. Los Angeles County*, 669 F.2d 1311 (9th Cir.1982), vacated on other grounds, *County of Los Angeles v. Jordan*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982) ................................................................................................................ 4, 7

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ................................................................................... 9, 19

*Longcrier v. HL-A Co., Inc.*, 595 F.Supp.2d 218 (S.D. Ala. 2008) ............................. 12

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008) ............................... 3

*Mesa v. Ag-Mart Produce, Inc.*, 2008 WL 2790224 (M.D. Fla. 2008) ........................ 10

*Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir. 1983) ................................. 3

*Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482 (C.D.Cal. 2006) ............................ 6, 9

*Nicholson v. UTI Worldwide*, 2011 WL 1775726 (S.D. Ill. 2011) ............................... 12

*Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361 (C.D. Cal. 2009) ...................... 10

*Ross v. RBS Citizens, N.A.*, ___ F.3d ___, 10-3848, 2012 WL 251927 (7th Cir. Jan. 27, 2012) ......................................................................................................................... 2

*Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046 (9th Cir. 2010) ........................................ 16

*Siegel v. Chicken Delight, Inc.*, 271 F. Supp. 722 (N.D. Cal. 1967) .......................... 19

*Sloan v. Renzenberger, Inc.*, 2011 WL 1457368 (D. Kan. 2011) ................................ 12

*Staton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003) ...................................... 3, 7

*Stearns v. TicketMaster Corp.*, 655 F.3d 1013 (9th Cir.2011) ...................................... 4

*Sullivan v. Chase Inv. Services of Boston, Inc.*, 79 F.R.D. 246 (N.D. Cal. 1978) .......... 7

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209

SPIRO MOSS LLP

F.R.D. 159 (C.D. Cal. 2002) ......................................................................... 10

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers*

    *Int'l Union, AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir.2010) .............3

*Valentino v. Carter- Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ........................ 3, 19

*Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S.Ct. 2541 (June 20, 2011) ..... 2, 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa Check/Mastermoney Antitrust*

    *Litig.)*, 280 F.3d 124 (2nd Cir. 2001) .......................................................... 10

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) .................................................. 1, 7, 13

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir.), amended by 273 F.3d

    1266 (9th Cir.2001)..................................................................................2

## CALIFORNIA DECISIONAL AUTHORITY

*Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715 (2004)............................................ 23

*Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381................................................ 24

*Capitol People First v. Dept. of Developmental Serv.*, 155 Cal. App. 4th 676 (2007) 23

*Gentry v. Superior Court*, 42 Cal. 4th 443 (2007) ........................................................ 23, 24

*Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000) ....................................... 16, 17

*Sav-on Drug Store, Inc. v. Superior Court*, 34 Cal. 4th 319 (2004)........................... 23

*Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144 (2000)...................................................... 18

## CALIFORNIA STATUTES

Bus. & Prof. Code § 17200, et. seq....................................................................... 18

## RULES

Fed. R. Civ. P. 23 ....................................................................................... passim

## REGULATIONS

29 C.F.R. § 785.48(b)................................................................................... 11

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SPIRO MOSS LLP

OTHER AUTHORITIES

DLSE Enforcement Policies and Interpretations Manual, at 47.2 ................................ 12

TREATISES

3 Conte & Newberg, *Newberg on Class Actions* § 7.20 (4th ed. 2002) .......................... 2

Wright, Miller & Kane, *Federal Practice and Procedure* § 1764 (2007 ed.) ................ 7

SPIRO MOSS LLP

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SPIRO MOSS LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This is wage and hour class action lawsuit involving customer service call center employees located in California, and as wage and hour class actions go, the question of certification is about as simple as they get.  Plaintiffs Eve Nercia Gillings, Patrice Hayes, Phillip Bond, Rhandi Walters and Melanie Gonzales ("Plaintiffs") allege that (1) Defendants utilized a timeclock rounding methodology with associated policies that, over time, resulted in an underpayment of wages to the putative class, and (2) Defendants utilized a timeclock system with associated policies that required putative class members to spend several minutes starting up their computers and various software programs without pay.  While these individual underpayments do not amount to a princely sum for any particular employee, they add up over time to Defendants' benefit.[1]

### II.   THE CLASS PLAINTIFFS SEEK TO CERTIFY

Plaintiffs seek certification of the following class:

> All persons employed as hourly-paid employees by any Defendant in any call center in California at any time on or after June 25, 2006, whose duties during that period of time included speaking with customers by telephone and using a computer in connection with the telephone calls. The job titles of the class members include but are not limited to: "sales representative/agent;" "customer service representative/agent"; and "mentor".

In addition, Plaintiffs request certification of any sub-class deemed essential by the Court to the effective and efficient management of this action.

---

[1] The aggregate underpayments, as described in some detail below, could exceed $1.7 million over the class period, excluding substantial penalties and interest.  For former employees, numbering just over 2,000, the Labor Code § 203 waiting time penalty wages amount to an estimated $3.6 million.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

**DISCUSSION**

III.   **CERTIFICATION OF THE DEFINED CLASS OF CALL CENTER EMPLOYEES IS APPROPRIATE UNDER FED. R. CIV. P. 23**

A.   **The Standards Governing Rule 23 Motions.**

Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).  *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979-80 (9th Cir. 2011), citing *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1186 (9th Cir.), amended by 273 F.3d 1266 (9th Cir.2001).

The Rule 23 analysis begins with Rule 23(a).  "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S.Ct. 2541, 2551 (June 20, 2011).[2]  Plaintiff bears the burden of establishing that each of the proposed Classes meets the requirements of Rule 23(a) and one section of Rule 23(b).  *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996).  However, the requirements of Rule 23 "should be liberally construed."  3 Conte & Newberg, *Newberg on Class Actions* § 7.20 (4th ed. 2002).

When deciding on a certification motion, all factual allegations in Plaintiffs' operative complaint must be accepted as true.  *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686, 688 n.3 (9th Cir. 1977), *cert. denied* 434 U.S. 829 (1977); *Blackie v. Barrack*, 524 F.2d 891, 900 n. 17 (9th Cir. 1975), cert. denied, 429 U.S. 816

---

[2] Of course, this case has little in common with *Dukes*.  The legality and adequacy of wage payments is a strict liability issue for which no individual inquiry of intent is required.  Rounding of pay is unlawful when, over time, it tends to underpay.  That is all that need be shown.  Similarly, a series of policies that require employees to spend time starting computers, off-the-clock, for no pay, are unlawful.  This case suffers from none of the classwide core proof issues that plagued *Dukes*, where many thousands of different people made decisions regarding promotions of millions of women.  *See, e.g.*, *Ross v. RBS Citizens, N.A.*, ___ F.3d ___, 10-3848, 2012 WL 251927 (7th Cir. Jan. 27, 2012) (finding *Dukes* inapposite because the plaintiffs' overtime claim required no proof of individual discriminatory intent.)

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

(1976).  As the Ninth Circuit reiterated in *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir. 1983), a limited "inquiry into the substance of a case may be necessary to ascertain satisfaction of Rule 23(a)'s commonality and typicality requirements, [but] it is improper to advance a decision on the merits to the class certification stage."  *Id.* at 480 (citing *Eisen*, 417 U.S. at 177-178); see also *Valentino v. Carter- Wallace, Inc.*, 97 F.3d 1227, 1231-32 (9th Cir. 1996).  "Nonetheless, the district court does not conduct a mini-trial to determine if the class 'could actually prevail on the merits of their claims.' [*Ellis*], at 983 n. 8; *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co*., 593 F.3d 802, 808 (9th Cir.2010) (citation omitted) (court may inquire into substance of case to apply the Rule 23 factors, however, '[t]he court may not go so far ... as to judge the validity of these claims.')."  *Johns v. Bayer Corp.*, 09CV1935 AJB POR, 2012 WL 368032 (S.D. Cal. Feb. 3, 2012).  Instead, at this point, the Court need only determine if the Plaintiff has satisfied Rule 23, not weigh competing evidence.  *Staton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003); *Blackie*, 524 F.2d at, 901 n.17.

Evidence put forward at this time is not evaluated on an admissibility standard, such as would be the case for summary judgment or trial.  At the certification stage, "the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." *Mazza v. Am. Honda Motor Co*., 254 F.R.D. 610, 616 (C.D. Cal. 2008), reversed on other grounds. "[I]n determining whether to certify the class, the district court is bound to take the substantive allegations of the complaint as true." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig*., 691 F.2d 1335, 1342 (9th Cir. 1982) (citing *Blackie*, 524 F.2d at 901 n.7 (9th Cir. 1975)). "[T]he court may consider evidence that may not be admissible at trial," *Mazza*, 254 F.R.D. at 616 (citing *Eisen*, 417 U.S. at 178), and a "district court may certify a class without supporting evidence." *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) (citing *Hanon v. Dataproducts Corp*., 976 F.2d 497, 509 (9th Cir. 1992)). "The court need not address the ultimate admissibility of the parties' proffered

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SPIRO MOSS LLP

exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the [Motion for Certification]." *Mazza*, 254 F.R.D. at 616.

"The amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie*, 524 F.2d at 905; *Stearns v. TicketMaster Corp.*, 655 F.3d 1013, 1026 (9th Cir.2011) (citing *Blackie* in a case decided after the *Wal–Mart* and *Ellis* decisions).

**B.      This Case Meets the Requirements of Fed. R. Civ. P. 23(a).**

A party seeking to certify a class simply must satisfy the four prerequisites enumerated in Rule 23(a).  Plaintiffs do so with little difficulty in this case.

**1.      The Proposed Class Is Sufficiently Numerous To Satisfy The "Numerosity" Requisite Of Rule 23(a).**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable," not impossible.  FED. R. CIV. P. 23(a)(1); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  But Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity; rather, whether joinder is impracticable depends on the facts and circumstances of each case.  *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980).  Here, as discussed below, Class size has been stated explicitly.

There is no specific number of class members required for certification. "Nonetheless, courts have recognized that the numerosity requirement is generally satisfied when the class is in excess of forty members. *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir.1982) (finding 39 individuals was likely sufficient number), vacated on other grounds, *County of Los Angeles v. Jordan*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982); *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D.Cal.2000); *see also e.g. Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir.1997)." *Charlebois v. Angels Baseball, LP*, SACV 10-0853 DOC ANX, 2011 WL 2610122 (C.D. Cal. June 30, 2011).

In this case, the numerosity of the proposed Class cannot reasonably be disputed. In sworn discovery responses, Defendants stated the Class included at least 2,919 members as of January 5, 2012. (Exh. 19, at 5:1-3 and 6:3-4; Exh. 20, at 6:6-7; Exh. 21, at 5:1-2 and 6:3-4.) Joinder of these nearly 3,000 class members would be impracticable. Plaintiffs' proposed Class is numerous.

### 2. Common Issues of Law and Fact Exist, Satisfying The Requirements Of Rule 23(a)(2).

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). To satisfy Fed. R. Civ. P. 23(a)(2), "not all questions of law or fact need to be common." *Hansen v. Ticket Track, Inc.*, 213 F.R.D. 412, 414 (W.D. Wash. 2003). In fact, a single common question can suffice. *Haley*, 169 F.R.D. at 648. Here, common issues of law and fact in this action actually predominate over individualized issues, readily satisfying the requirements of Rule 23(a)(2).

In *Hanlon v. Chrysler Corp.*, *supra*, 150 F.3d at 1019, the Ninth Circuit ruled that "Fed. R. Civ. P. 23(a)(2) is neither exacting nor difficult to satisfy:

> Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts, even when coupled with disparate legal remedies within the class. . .

The Ninth Circuit considers the requirements for finding commonality under Rule 23(a)(2) to be "minimal." *Id.*, at 1020. Therefore, allegations that "a common core of operative facts exists and that [defendant] has engaged in a standard course of conduct towards members of the proposed class" readily satisfy the commonality requirement. *Hansen*, 213 F.R.D. at 415.

The claims in this case raise numerous common questions of fact and law:

1. whether Defendants' policy of rounding time clock entries when calculating pay was used in such a manner that it resulted, over a period

SPIRO MOSS LLP

of time, in failure to compensate employees properly for all the time they have actually worked;

2.   whether Defendant failed to compensate its employees for time worked;

3.   whether Defendants failed to provide employees with accurate itemized wage statements as required pursuant to Labor Code § 226

4.   whether Defendant failed to pay departing employees all wages due upon separation of employment; and

5.   whether Defendant's failure to compensate its current and/or former employees for time worked and its failure to provide departing employees all wages due and payable constitutes unfair, unlawful and/or fraudulent business practices under Cal. Bus. & Prof. Code § 17200, et seq.

Each of these questions individually constitutes a common issue that is not unique to any individual members of the Class and can be resolved completely or primarily with common evidence.  In short, Defendants have engaged in a standard course of conduct toward members of the Class.  *See*, *e.g.*, *Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 488 (C.D.Cal. 2006) (finding commonality satisfied where class members' claims "derive from a common core of salient facts, and share many common issues" and granting class certification).

### 3.   Plaintiffs' Claims Are Typical Of The Class They Seek To Represent, Satisfying Rule 23(a)(3).

The "typicality" requisite of FED. R. CIV. P. 23(a)(3) turns on whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class.  Under the requisite's "permissive standards," claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d at 1020.

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of

conduct.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

"[T]he requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other class members."  Wright, Miller & Kane, *Federal Practice and Procedure* § 1764 (2007 ed.).  In other words, "[f]actual variations are not fatal to a proposed class when the claims arise out of the same remedial and legal theory."  *Sullivan v. Chase Inv. Services of Boston, Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978).  Rather, as the Ninth Circuit has noted, typicality is satisfied so long as the named plaintiff's claims "stem[] from the same event, practice, or course of conduct that forms the base of the class claims and [are] based upon the same legal remedial theory."  *Jordan,* 669 F.2d at 1321.

Here, the Plaintiffs all experienced unpaid time at the beginning of their shifts, estimated at about four to five minutes.  (Exh. 23, at 120:22 – 121:11; Exh. 24, at 39:11-14; Exh. 25, at 53:1-12; Exh. 26, at 51:15-21, 55:11 – 57:10)  Rounding was also applied to time entries for the Plaintiffs.  For example, Eve Gillings has been underpaid almost 50 hours of time due to the use of rounding.  (Exh. 22.)  Plaintiffs have the same injuries and claims that they assert on behalf of the Class as a whole.  They are typical of the Class.

### 4.    The Proposed Class Representatives And Their Counsel Will Adequately Represent The Interests Of The Class.

The fourth and final Rule 23(a) requirement – adequacy – requires (1) that the proposed representatives do not have conflicts of interest with the proposed class and (2) that the representatives are represented by qualified counsel. *Hanlon,* 150 F.3d at 1020; *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998).  Mere divergence of opinion between the class and its representative is not sufficient.  *See In re Mego Fin. Corp. Sec. Litig.* 213 F.3d 454, 462 (9th Cir. 2000).

In *Staton v. v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003), the Ninth Circuit

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SPIRO MOSS LLP

1   stated two questions that define  adequacy of representation: (1) do the representative

2   plaintiffs and their counsel have any conflicts of interest with other class members,

3   and (2) will the representative plaintiffs and their counsel prosecute the action

4   vigorously on behalf of the class?  *Staton*, 327 F.3d at 957; *Hanlon*, 150 F.3d at 1020.

5   Here, the answer to the first is "No," and the second, "Yes."

> **a)**   *Plaintiffs, As They Have Already Demonstrated Their*
>         *Willingness To Do, Will Fairly, Vigorously And Adequately*
>         *Represent The Interests Of The Class.*

9        First, as to the issue of conflicts, because adequacy is closely related to

10   typicality, where (as here) the claims of the class members and the class

11   representatives are co-extensive, there is no conflict.  *General Tel. Co. v. Falcon*, 457

12   U.S. 147, 157- 158 n. 13 (1982).  Moreover, if there are any doubts as to the adequacy

13   of representation or potential conflicts, they should be resolved in favor of upholding

14   the class, subject to later possible reconsideration.  *Newberg on Class Actions* § 7.24 at

15   7-80 to 7-81 (3d ed. 1992).

16        There is no antagonism between Plaintiffs' interests and those of the Class.

17   Plaintiffs and each Class member were harmed by Defendant's common course of

18   conduct, so each of Plaintiffs' claims is typical of other Class members.  Indeed,

19   Plaintiffs have filed this class action to bring attention to Defendant's alleged unlawful

20   and unfair business practices, and to provide a means whereby damaged Class

21   members may obtain appropriate and meaningful relief.  And Plaintiffs understand

22   that they are acting on behalf of the Class, not for personal gain:

23        I only want what I feel like I earned. I don't want -- I don't need anything

24        more than that.  It's just about being fair, more so than getting money, and

25        I don't even -- it's just kind of more like the principal of it because it's like

26        it's just unfair kind of working conditions, you're there and you needed to

27        be there and everybody knows that you need to be there early and you're

28        supposed to be paid for it.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SPIRO MOSS LLP

1 | (Exh. 26, at 147:14-22.)

2 |     Q. So you would be seeking that relief on behalf of people that are still there?

3 |     A. Yes.

4 | (Exh. 25, at 109:25 – 110:2, and see 111:22-24 ("[W]hat this case is about is just

5 | fair practices within the work communities is pretty much all I was seeking.".)

6 |          **b)**     *Plaintiffs Propose Spiro Moss LLP, The Phelps Law Group,*

7 |                      *The Cooper Law Firm, P.C. and The Carter Law Firm As*

8 |                      *Class Counsel.*

9 |     Second, as to the issue of vigorous prosecution, Plaintiffs and their counsel have

10 | been and will be zealous advocates for the Classes.  In addition, Plaintiffs' counsel

11 | have extensive experience in successfully prosecuting both class actions and other

12 | litigation against national companies.  (*See*, *e.g.*, Leviant Decl., ¶¶ 45-46; Cooper

13 | Decl., ¶¶ 3-11; Carter Decl., ¶¶ 4-8; Phelps Decl., ¶¶ 4-5.)  Thus, Plaintiffs and their

14 | counsel satisfy Rule 23(a)(4)'s adequacy requirement.

15 |     **C.**     **Certification Under Rule 23(b)(3) is Appropriate.**

16 |     Under Rule 23(b)(3), certification is proper if (1) questions of law or fact

17 | common to the members of the class predominate over any questions affecting only

18 | individual class members; and (2) class treatment is superior to other available

19 | methods for the fair and efficient adjudication of the controversy.   *Local Joint Exec.*

20 | *Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-

21 | 63 (9th Cir. 2001); *Negrete*, 238 F.R.D. at 487, 489.  Here, Plaintiffs satisfy both

22 | predominance and superiority, warranting class certification.

23 |     **1.**     **Common Questions of Law or Fact Predominate.**

24 |     "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

25 | sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v.*

26 | *Windsor*, 521 U.S. 591, 623 (1997).  The Court must find that questions of law or fact

27 | common to the class members predominate over any questions affecting only

28 | individual members. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa*

*Spiro Moss LLP*

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

*Check/Mastermoney Antitrust Litig.)*, 280 F.3d 124, 136 (2nd Cir. 2001) (common questions predominate where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.").

The Ninth Circuit looks for "a common nucleus of operative facts and potential legal remedies," but does not require complete identity among class members. *Hanlon*, 150 F.3d at 1022-23. In *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002), the court found class certification appropriate because the case centered on "a common nucleus of operative facts" and because the action focused "on the words and conduct of the defendants rather than on the behavior of individual class members." *Id.* (citations omitted); *see also Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361, 367 (C.D. Cal. 2009) ("In evaluating predominance, the Court looks to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members.").[3]

Plaintiffs herein demonstrate that there are numerous, important questions of law and fact which, as in the cases discussed above, are based on Defendant's conduct and are common to the members of the Classes (here, the common conduct all arises from questions about the legality of uniform payroll practices).

---

[3] Many courts have certified classes where the alleged wage and hour violation stems from a common payroll practice. *See e.g.*, *Eldred v. Comforce Corp.*, 2010 WL 812698, *20 (N.D. N.Y. 2010) ("[w]hen plaintiffs are allegedly aggrieved by a single policy of defendants, such as [a] blanket policy ... the case presents precisely the type of situation for which the class action device is suited..."); *Bricker v. Planet Hollywood New York, L.P.*, 2009 WL 2603149, *1 (S.D. N.Y. 2009) ("With respect to commonality, all of the putative class claims arise out of common questions of law and fact relating to Defendants' payroll practices and whether they comply with federal and state wage laws."); *Barragan v. Evanger's Dog and Cat Food Co., Inc.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009) ("Commonality exists because all class members claim the same common pay practice of Defendants..."); *Mesa v. Ag-Mart Produce, Inc.*, 2008 WL 2790224, *8 (M.D. Fla. 2008) (certifying class based on plaintiff's allegation that all piece-rate employee were paid through the same payroll system and that the payroll practices applied to the named plaintiff and other putative class members).

SPIRO MOSS LLP

SPIRO MOSS LLP

   **a)**     *Common Issue of Law:  Rounding is unlawful when it*
              *results, over a period of time, in failure to compensate*
              *employees properly for all the time actually worked.*

Rounding that, over time, works to the detriment of employees is unlawful
under federal law:

> "Rounding" practices. It has been found that in some industries,
> particularly where time clocks are used, there has been the practice for
> many years of recording the employees' starting time and stopping time
> to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour.
> Presumably, this arrangement averages out so that the employees are
> fully compensated for all the time they actually work. For enforcement
> purposes ***this practice of computing working time will be accepted,***
> ***provided that it is used in such a manner that it will not result, over a***
> ***period of time, in failure to compensate the employees properly for all***
> ***the time they have actually worked***.

29 C.F.R. § 785.48(b) (emphasis added); *Austin v. Amazon.Com, Inc*., 2010 WL
1875811*3 (W.D. Wash. 2010) ("the DOL regulation does not give Amazon a
blank check to round time in any manner it sees fit.").  California's Division of
Labor Standards Enforcement, in its Enforcement Policies and Interpretations
Manual, follows the federal practice:

> 47.2 "Rounding" Practices.  As mentioned above, the federal regulations
> allow rounding of hours to five minute segments.  There has been
> practice in industry for many years to follow this practice, recording the
> employees' starting time and stopping time to the nearest 5 minutes, or to
> the nearest one-tenth or quarter of an hour. Presumably, this arrangement
> averages out so that the employees are fully compensated for all the time
> they actually work.  ***For enforcement purposes this practice of***
> ***computing working time will be accepted by  DLSE,  provided that it is***

SPIRO MOSS LLP

1    ***used in such a manner that it will not result, over a period of time, in***

2    ***failure to compensate the employees properly for all the time they have***

3    ***actually worked***. (See also, 29 CFR § 785.48(b)).

4    DLSE Enforcement Policies and Interpretations Manual, at 47.2 (emphasis added).

5    Rounding-based claims fundamentally present a matter of uniform application

6    of employer payroll policies and are frequently certified.  *See, e.g., Cervantez v.*

7    *Celestica Corp.*, 253 F.R.D. 562 (C.D. Cal. 2008).  Other courts have easily reached

8    the same conclusion, certifying "rounding" classes or collective actions.  *See e.g.,*

9    *Nicholson v. UTI Worldwide*, 2011 WL 1775726 (S.D. Ill. 2011) (certifying a class of

10   fork-lift drivers subject to common "time-clock rounding" policy); *Sloan v.*

11   *Renzenberger, Inc.*, 2011 WL 1457368 at *3 (D. Kan. 2011) (conditionally certifying

12   an FLSA collective action alleging unlawful "rounding."); *Flott v. Hair Salons, Inc.*,

13   2010 WL 5093923, at *1 (D. Neb. 2010) (approving settlement of previously certified

14   class alleging that employer's "rounding" practices violated federal and state law);

15   *Fisher v. Michigan Bell Telephone Co.*, 665 F.Supp.2d 819 (E.D. Mich. 2009)

16   (conditionally certifying collective action alleging employer's "rounding policy"

17   violated FLSA); *Gil v. Solectron Corp..* 2009 WL 88346 (N.D. Cal. 2009)

18   (conditionally certifying FLSA collective action alleging that employer's policy of

19   "rounding" time resulted in under-recording of hours worked); *Longcrier v. HL-A Co.,*

20   *Inc.*, 595 F.Supp.2d 218 (S.D. Ala. 2008) (same).

21                **b)**      *Common Issues of Fact:  Defendants' uniform practice of*

22                            *rounding underpaid the class nearly $300,000.*

23   Rounding works against Time Warner employees in two ways.  First, the

24   policies of Time Warner, over the long run, tend to favor Time Warner and underpay

25   employees.  Time Warner sets policies and engages in uniform practices as follows:

26        1. Time Warner rounds clock in and clockout events to the nearest quarter

27           hour;  (Exh 28, at 34:8-17, 38:20 – 39:3)

28        2. Time Warner has used Kronos throughout the class period to effectuate its

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

rounding practices; (Exh. 28, at 20:5-9)

3.  Time Warner has a uniform attendance policy (Exh. 28, at 48:24 – 49:6), with no grace period for tardy arrivals (Exh. 28, at 50:12-15), that applies to all types of call center employees (Exh. 28, at 73:5-17)

4.  Employees must be ready to receive calls at their start time (Exh. 1 ("You must log in to Avaya at the start of your shift" and "You need to be available to take calls even if ACP is still loading");

5.  Employees are tardy if they are one minute late (Exh. 2 ("An employee is late 1 minute.  This is .5 of an occurrence."); Exh. 3);

6.  Employees cannot clock out early (Exh. 2 ("An early departure is defined as clocking out before the end of the scheduled shift" and "An employee leaves work early 1 minute.  This .5 of an occurrence." Exh. 3);

7.  Supervisors must have a rational reason for varying the tardy policy, rather than demonstrating favoritism or arbitrary behavior (Exh. 28:7-19)

8.  Employees are graded on their AHT, or "Average Handle Time"; (Exhs. 10, 29, 30)

9.  Calls are to be handled, **with quality**, in 475 seconds or less (under 8 minutes); (Exh. 29)

10. Employees are graded on customer satisfaction. (Exhs.10, 29; Exh. 28, at 60:8-11)

Time Warner enforces its policies.  For example, in the case of Plaintiffs, Rhandi Walters has been counselled for clocking in *two* minutes late on several occasions, and Patrice Hayes has been counselled for clocking in *three* minutes late on several occasions.  (Exhs. 5 and 6.)  Payment under the Scorecard system uses AHT as a metric to determine the "commission" rate applied to each sale.  (Exh. 10.)

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

As a result of these policies and pay metrics, call center employees are more likely to log in at or slightly before their start time.[4]  And because of the random distribution of incoming calls, it is also likely that a call center employee's last call of the day will straddle the scheduled end time.  But since employees are incentivized to keep calls under 10 minutes (which is borne out by the mid-level call handle time of 6-8 minutes), the typical amount of time that a final call will run over the scheduled shift end will, over time, average out to less than seven minutes of overage per shift.

Shifts are typically scheduled to begin and end on the hour or half-hour, as evidenced by the sample time records.  (Leviant Decl., ¶ 42.)  Under the 15-minute rounding policy, if an employee clocks in between one and seven minutes before their shift, those minutes get "rounded off," and the employee is not paid for them.  Likewise, if the employee clocks out between one and seven minutes after the scheduled end time, the employee is not paid for those minutes either.  It is true that the times will be "rounded up" if the employee clocks in or out between eight and fourteen minutes before or after the scheduled time.  However, as a result of policies and effects of those policies discussed above, it is more likely that the early start and late end times will be seven minutes or less, resulting in loss of pay over time.

This theoretical framework is borne out by the evidence.  As a result of a discovery dispute compromise reached after Magistrate Judge Block issued a tentative Order in favor of Plaintiffs on a motion to compel, Defendants produced the time clock records for a randomly drawn sample of 200 employees.  (*Gillings* Docket Item No. 56.)  These records show the actual times, down to the minute, that the employees clocked in and out for their shifts.  (Leviant Decl., ¶ 43.)  Plaintiffs compared these

---

[4] Time Warner admits that there is essentially no discretion to enforce attendance policies, other than in situations that are objectively beyond anyone's control, such as major traffic incidents.  (Exh. 28, at 49:3-15, 50:13-15, 52:15-23.)

1    actual punch times to the rounded times in order to compare the time these employees

2    actually worked to the amount of time for which they were paid.[5]

3        Using this method, Plaintiffs have calculated the underpayment of wages to the

4    sample employees, due to rounding only, as equalling roughly $18,500, assuming a

5    low average hourly wage of $12.00 per hour for the sample group.  (Leviant Decl., ¶

6    43.)[6]  That is to say, the data showed that Time Warner's facially neutral rounding

7    policy was anything but fair, as these $12 per hour employees lost an average of just

8    under $100 each due to "rounding."  When extrapolated to the entire group of 2,919

9    employees, this data shows that Time Warner made off with approximately $270,000

10   that should have been paid out to the class members.[7]  Even if Defendants tried to

---

[5] Plaintiffs used a "macro" to process the raw data provided by Defendants into a form suitable for comparing rounded (paid) time to actual work time. The Declaration of Jacob Hilderbrand describes the Excel macro programming process performed to automate these calculations.  The Declaration of H. Scott Leviant describes the results of running the macro against the data supplied by Defendants. (Leviant Decl., ¶ 43.)

[6] Plaintiffs' wage statements indicate hourly wages of $13 or more.  The use of $12.00 per hour, purely for calculations, is conservative.

[7] To perform this extrapolation, the damage figure for the sample is multiplied by the ratio of the entire class (2,919) to the sample (200), which is approximately 14.6.  That simple math indicates that rounding has harmed the class in the aggregate amount of roughly **$270,000** (± $18,000 due to the margin of error).  This figure extrapolates to the entire population of class members with an accuracy (or "margin of error") of better than ± 6.7%.  (Leviant Decl., ¶ 43.)  Based upon that sample size, and, secondarily, the class size of 2,919, the expected margin of error, calculated as an "overestimate," is:

$$1.96 \sqrt{\frac{0.5(1-0.5)}{200}} \sqrt{\frac{2{,}919-200}{2{,}919-1}} = 0.067$$

That is, the sample group represents an accurate portrait of the full class, and any calculations made from the sample will so closely represent the true value for the full class that projections will be off by **no more than** 6.7%.  The term "1.96" is derived from a standard deviation table.  It is not affected by sample or population size.  2,919 is the Class size, but changes in that number have a small impact on the equation, since the first radicand's denominator is heavily influenced by a change in sample size, while the second radicand changes little with even large changes in population size.  In other words, while it is frequently believed that larger populations require larger samples, the size of the sample and the confidence interval are the primary factors determining the margin of error.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

1  argue that this rounding-induced underpayment is *de minimis* or not a violation of

2  federal and state law (which would not be credible), they ***cannot*** argue that this issue

3  presents anything other than a quintessentially classwide question that has already

4  been approximately answered with a sampling of class data.

5        In other words, taking a small subset of time records and subjecting them to

6  some basic number crunching readily answers a common question:  did Time

7  Warner's facially neutral rounding policy violate the law by systematically depriving

8  the class members of wages?  This question – free of discretionary judgments of

9  managers and policy makers and tethered to nothing more than punch data and

10  objective calculations – is precisely what Justice Scalia was looking for, but failed to

11  find, from the *Wal-Mart* plaintiffs.  See *Wal-Mart Stores, Inc.* 131 S.Ct. at 2551 (June

12  20, 2011) (holding that "[plaintiffs'] claims must depend upon a common question of

13  such a nature that it is capable of classwide resolution—which means that

14  determination of its truth or falsity will resolve an issue that is central to the validity of

15  each one of the claims in one stroke").

16              **c)**        *Common Issue of Law:  Employees must be paid for all time*

17                            *worked.*

18        California law requires that employees be compensated for all time "during

19  which an employee is subject to the control of an employer" *Rutti v. Lojack Corp.,*

20  *Inc.*, 596 F.3d 1046, 1061 (9th Cir. 2010), citing *Morillion v. Royal Packing Co.*, 22

21  Cal. 4th 575, 582 (2000), or when the employer "suffers or permits" the employee to

22  work, *Morillion*, at 585.  Even unauthorized time worked must be compensated:

23              This time can include work such as unauthorized overtime, which the

24              employer has not requested or required. "Work not requested but suffered

25              or permitted is work time. For example, an employee may voluntarily

26              continue to work at the end of the shift.... The employer knows or has

27              reason to believe that he is continuing to work and the time is working

28              time. [Citations.]" (29 C.F.R. § 785.11 (1998).) "In all such cases it is the

duty of the management to exercise its control and see that the work is
not performed if it does not want it to be performed." (29 C.F.R. § 785.13
(1998).)  Although our state cases have not interpreted the phrase, federal
cases have discussed the meaning of "suffer or permit to work" defining
"[e]mploy" under the FLSA. (29 U.S.C. § 203(g).) " '[T]he words "suffer
" and "permit" as used in the statute mean "with the knowledge of the
employer. " ' [Citation.] Thus an employer who knows or should have
known that an employee is or was working overtime must comply with
the provisions of [29 U.S.C.] § 207 [maximum hours]." (*Forrester v.
Roth's I. G. A. Foodliner, Inc*. (9th Cir. 1981) 646 F.2d 413, 414; see also
29 C.F.R §§ 785.11, 785.13.)

*Morillion*, at 585.

> **d)**     *Common Issue of Fact:  Defendants did not compensate
> Class members for time spent preparing workstations.*

Call center employees must clock in through the AVAYA phone system.  (Exh.
1.)  But, when they clock in, they must be ready to receive calls from customers,
particularly because customer satisfaction would be negatively affected by an inability
to respond to customer inquiries.  Thus, employees must start their computers and
launch the necessary programs for customer sales and support before clocking into the
phone system.  (Exhs. 1 and 2; Exh. 28, at 26:8-17, 27:16-23, 29:2-5, 29:23 – 30:3.)

This causes an understatement of time worked at the beginning of each shift.
But since employees must be ready to work at the start of a shift, this off-the-clock
start-up time is likely to occur right before an even hour increment.  And because the
startup time was consistently estimated by the Plaintiffs to last about four to five
minutes (Exh. 23, at 120:22 – 121:11; Exh. 24, at 39:11-14; Exh. 25, at 53:1-12; Exh.
26, at 51:15-21,  55:11 – 57:10), even if this time were fully captured, it would not
result in additional pay under the rounding system, which would round off in Time
Warner's favor any clock-in times up to 7 minutes before the start of a shift.  As a

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SPIRO MOSS LLP

1   result, the off-the-clock work activities for call center employees provides Time

2   Warner with a few additional minutes of work from each employee every shift, and

3   those minutes add up.  If an employee worked 20 shifts a month, and took only three

4   minutes to start up a computer to a state ready to assist customers, that would

5   understate work time by about 1 hour a month.  For a worker making $10 to $12 an

6   hour, that could result in an underpayment of roughly $120 to $144 per year, per

7   employee.  It is fair to say that employees working for $10 to $12 an hour would

8   gladly accept an additional $120 for a year of work.  For every 1,000 call center

9   employees, Time Warner could reasonably be retaining roughly $140,000 in wages a

10  year.  If there were 2,000 call center employees in California at any one time, the five-

11  year total savings for Time Warner would be roughly $1.4 million, excluding interest

12  and penalties.  That might be chump change to Time Warner, but it isn't chump

13  change to the Class – it is wages that they are owed.

14      **e)**     *Derivative Labor Code violations and the Unfair*

15              *Competition Law raise no predominance issues.*

16      Common questions also predominate as to Plaintiffs' claim under the UCL.

17  The UCL prohibits unfair, unlawful and fraudulent business activities. Cal. Bus. &

18  Prof. Code § 17200, et. seq.  Each prong of the UCL is a separate and distinct theory

19  of liability.  See *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1153 (2000).  With

20  respect to the "unlawful" prong, the same common questions set forth above regarding

21  Labor Code violations are presented, as the UCL "borrows" those violations.  These

22  common questions predominate over any individual issues.

23      **f)**     *Individualized damages do not destroy predominance,*

24              *particularly when, as here, damages can be calculated with*

25              *precision from Defendants' electronic records.*

26      Finally, the individual nature of particular class members' damages do not

27  destroy predominance and need not be resolved until the class-wide issues have been

28  determined.  *See Local Joint Exec. Board of Culinary/Bartender Trust Fund v. Las*

Page 18

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SPIRO MOSS LLP

*Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).  In other words, differences among class members concerning the amount of their individual damages, which are unavoidable in class action litigation, do not prevent a suit from proceeding as a class action.  *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975), cert. denied, 429 U.S. 6 (1976).  As the district court explained in *In re MDC Holdings Securities Litigation*, 754 F. Supp. 785, 804 (S.D. Cal. 1990), "It would defy common sense to find that class certification is defeated by the possibility of individual questions pertaining to one of the elements of the case's cause of action."

Thus, although different class members may have been damaged in slightly different amounts, those varying amounts of damages are calculable and cannot prevent certification of the Classes.  Because Plaintiffs' claims emanate from a common nucleus of operative facts – namely, Defendant's unlawful and unfair pay practices – common questions of law and fact predominate in this litigation.  *Siegel v. Chicken Delight, Inc.*, 271 F. Supp. 722, 726 (N.D. Cal. 1967).

        **2.**       **Class-Action Treatment Is Superior To Individual Actions.**

Rule 23(b)(3) also requires this Court to determine whether "a class action is superior to other available methods for a fair and efficient adjudication of the controversy."  A class action is superior to other methods of litigation "[w]here class wide litigation of common issues will reduce litigation costs and promote greater efficiency" and where "no realistic alternative exists to class wide treatment." *Valentino v. Carter- Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996).  Rule 23(b)(3) lists four specific factors to be considered in deciding superiority.  In addition to those four factors, additional factors have been identified as affirming the superiority of employment law class actions.

        **a)**    *Based On The Nature And Size Of The Claims, Class Members Have Little Incentive To Bring Individual Actions.*

The first factor to be considered is the interest of each class member in "individually controlling the prosecution or defense of separate actions."  Fed. R. Civ.

SPIRO MOSS LLP

P. 23(b)(3)(A).  Here, any such interest is minimal because, while the aggregate

damages of the class members may be large, the damages of each individual class

member will be too small to warrant pursuit of individual claims.  *See Hanlon*, 150

F.3d at 1023.  In fact, a class action is the only feasible means by which individual

employees who are victims of Defendant's employment practices can hope to obtain

any cost-effective remedy.  Each employee's prospective recovery is insufficient to

motivate any individual employee to pursue litigation because this fairly small amount

pales in comparison to the significant time and money routinely expended during

litigation.  In that regard, any suggestion that individual class members have a strong

interest in individually controlling their own litigation is both unrealistic and contrary

to the philosophy of Rule 23.  As Judge Weinfeld acknowledged in *duPonte Glore*

*Forgan, Inc. v. American Telephone and Telegraph Co.*, 69 F.R.D. 481 (S.D.N.Y.

1975), a case in which one of the class representatives had a claim of $130,000 (an

amount far in excess of the individual claims in this action):

> [T]he time-cost factor of legal fees in view of the vigor of Defendant's
>
> opposition make it uneconomical to proceed with the suit on an
>
> individual basis even assuming an ultimate recovery – in fact, Monsanto
>
> would, if required to proceed on an individual basis, forego its claim ...
>
> Thus the assertion that this action will not go forward at all if class action
>
> status is denied is plausible. The hard fact is that economic reality
>
> indicates the likelihood that unless this action is permitted to proceed as a
>
> class suit, it is the end of this litigation.

*Id.* at 487.  In other words, "[t]he class action is one of the few legal remedies the

small claimant has against those who command the status quo." *Eisen v. Carlisle*

*& Jacqueline*, 417 U.S. 156, 186 (1974) (Douglas, J., conc. and diss. in part).

　　　　If Plaintiffs cannot prosecute their relatively modest monetary claims on a class-

wide basis, they and the Classes will be left without recourse or remedy. The United

States Supreme Court aptly explained that "[t]he policy at the very core of the class

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

1   action mechanism is to overcome the problem that small recoveries do not provide the

2   incentive for any individual to bring a solo action prosecuting his or her rights."

3   *Amchem Prods.*, 521 U.S. at 617.  Here, a lawsuit to recover relief for harm suffered

4   due to the improper and unlawful employment practices of a large and powerful

5   corporation like Time Warner is by its very nature difficult and costly.  Class members

6   could not afford to undertake individual litigation against Defendant to recover the

7   modest damages that would be at issue.  As a result, all class members would be

8   denied the opportunity to receive meaningful redress against Defendant.  Therefore,

9   because the class action mechanism was designed to thwart such injustice (*see*

10  *Amchem Prods.*, 521 U.S. at 617), class certification is particularly appropriate here.

11              **b)**      *The Only Other Identical Action (Gonzales) Has Been*

12                          *Related to Gillings* for the purposes of Class Certification.

13  On December 23, 2011, Plaintiff Gonzales filed a motion with this Court to

14  consolidate the *Gillings* and *Gonzales* cases.  The parties subsequently agreed that the

15  matters should be consolidated for the purposes of pre-certification discovery and

16  class certification proceedings, and filed a joint stipulation to that effect on December

17  30, 2011.  (*Gonzales* Dkt. No. 29.)  On January 17, 2012, the Court approved the

18  consolidation stipulation and ordered the cases consolidated for the purposes of pre-

19  certification discovery and class certification.  (*Gonzales* Dkt. No. 33; *see Gillings*

20  Dkt. No. 71 (Notice of Ruling).)  The court set a pre-certification discovery cut off

21  date of January 9, 2012 and set a single class certification hearing for a single motion

22  to certify both cases on March 26, 2012.  *Id.*  On January 30, 2012, the Court heard

23  oral argument with regards to the issue of whether the cases should be consolidated

24  only for certification proceedings, or in all other respects, and ordered that Defendant

25  file an opposition to Plaintiffs' motion to consolidate (in all respects) by February 13,

26  2012, and that Plaintiff file her reply brief by February 20, 2012.  (*Gonzales* Dkt. No.

27  37.)  The Court affirmed its earlier order that the cases are deemed consolidated for

28  class certification proceedings; hence, a single motion for both is provided here.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

Therefore, issues presented by both related actions are tied up in this single certification motion, and the Court can make one ruling that will lay the foundation for the course of litigation for both matters.

    **c)**    *Concentrating Class Claims in a Single Forum Is Desirable.*

Another factor to be considered is the desirability "of concentrating the litigation of the claims in the particular forum." *See* Fed. R. Civ. P. 23(b)(3)(C). The United States District Court for the Central District of California is not only an appropriate forum for this class action, but the best and most logical forum. This forum is convenient for the parties and their counsel. First, the named Plaintiffs all reside in the California and members of the Classes currently reside and/or have resided in California. Second, Defendant is and has been, at all times relevant to this lawsuit, a corporation authorized to conduct and actually conducting business in California and in fact does conduct substantial business within the Central District. Thus, because Plaintiffs and Defendant are within this Court's jurisdiction, this Court is the appropriate forum for this suit. Therefore, because no other particular forum stands out as a "logical venue for concentration of claims," this venue is appropriate. *Hanlon*, 150 F.3d at 1023.

    **d)**    *No Significant Management Difficulties Are Present.*

The Court must compare "the difficulties likely to be encountered in the management of a class action" with other available alternatives. *See* Fed. R. Civ. P. 23(b)(3)(D). Management of this case as a class action will not involve such difficulty that individual actions would be a better way of resolving this controversy. Liability to the Classes will be determined on the basis of common proof of the practices at issue and the common fact of damage to all class members.

With respect to the need for individualized damage determinations, as discussed above, "The amount of damages is invariably an individual question and does not defeat class treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975). With respect to how those damages will be proven, they can be determined through the use

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SPIRO MOSS LLP

SPIRO MOSS LLP

of well-established procedures, including surveys, questionnaires, representative sampling, and statistical extrapolation. *See, e.g., Capitol People First v. Dept. of Developmental Serv.*, 155 Cal. App. 4th 676, 692-93 (2007); *Sav-on Drug Store, Inc. v. Superior Court*, 34 Cal. 4th 319, 333, n.6 (2004); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 750 (2004) (sampling in a class action is proper since it "does not dispense with proof of damages but rather offers a different method of proof").

The claims in this matter will be proven, predominantly with two forms of mathematical data. First, Plaintiffs will present calculations generated from timeclock data for the Class. This data will precisely calculate the negative impact of rounding on employees and, at the same time, determine the base amount owed to each Class Member, before interest and related penalties. Second, some measure of average computer start-up time will be presented. Whether that is through anecdotal testimony of Plaintiffs, a survey of Class Member computer start time experiences, test platform data, or a combination of these forms of evidence, the management of the trial in this matter will be relatively simple, despite a Class of almost 3,000 individuals.

          **e)**     *Insulation From Fear of Retaliation by the Employer Renders Wage and Hour Class Actions Superior.*

Class actions are superior to individual litigation in that they provide current employees with insulation from fear of retaliation by their employer:

> A second factor in favor of class actions for these cases, as noted in *Bell,* is that a current employee who individually sues his or her employer is at greater risk of retaliation. We have recognized that retaining one's employment while bringing formal legal action against one's employer is not "a viable option for many employees."

*Gentry v. Superior Court*, 42 Cal. 4th 443, 459 (2007). And federal courts, recognizing this real potential for retaliation by employers, have held that the potential for retaliation in employment litigation is an important justification for

1    class certification, even where it was questionable that numerosity could be

2    satisfied. *Gentry*, 42 Cal. 4th at 459, collecting federal cases.

3               **f)**      *Uncertainty About Legal Rights Would Deter Individual*

4                      *Actions, Rendering Class Resolution Superior.*

5         Class actions are also superior to individual litigation because many individuals

6    may be unaware that their rights have been violated.  This is particularly true in

7    employment litigation class actions, where the employee may be unaware of the

8    wrongfulness of the employer's conduct:  "Similarly, it may often be the case that the

9    illegal employer conduct escapes the attention of employees." *Id.* at 461.  And

10    because overtime and other wage payment laws are often complicated, even

11    sophisticated employees may be unaware that their rights have been violated. *Id.*  In

12    this matter, it is unlikely that any significant portion of the Class is aware of the

13    variety of obligations imposed on their employer by the Labor Code.  That lack of

14    awareness, alone, renders individual actions substantially inferior to a class-wide

15    adjudication of Plaintiffs' claims.

16               **g)**      *Class Actions Provide For Uniform Enforcement Of*

17                      *Employees' Rights.*

18         In addition to insulating current employees from the fear (justified or otherwise)

19    of retaliation and providing redress to employees unaware of the full extent of their

20    rights, class actions provide a more efficient method for enforcing the statutory

21    policies of this state.  Trial courts should consider "the role of the class action in

22    deterring and addressing wrongdoing." *Linder v. Thrifty Oil Co.*, 23 Cal.4th 429 23

23    Cal.4th 429 at 445-446 (2000) (quoting *Blue Chip Stamps v. Superior Court* (1976) 18

24    Cal.3d 381, 385-386 (conc. opn. of Tobriner, J.)).  In the wage & hour context, class

25    actions are essential to effective deterrence of wrongful conduct. *Gentry*, *supra*, 42

26    Cal.4th at 462 (quoting *Bell*).

27

28

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

IV.    **CONCLUSION**

For the reasons set forth herein, Plaintiffs request that the Court certify the proposed Classes of current and former non-exempt Time Warner employees, appoint Plaintiffs as the representatives of the Classes, and designate Plaintiffs' counsel as counsel for the plaintiff Classes.

Dated: February 13, 2012          Respectfully submitted,

SPIRO MOSS LLP

By: _____

H. Scott Leviant

Marc Phelps
The Phelps Law Group

Scott B. Cooper
The Cooper Law Firm, P.C.

Roger R. Carter
The Carter Law Firm

Attorneys for Plaintiffs

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**