1   FISHER & PHILLIPS LLP
    Tamara I. Devitt (SBN 209683)
2   *tdevitt@laborlawyers.com*
    444 South Flower Street, Suite 1590
3   Los Angeles, CA  90071
    Telephone:  (213) 330-4500
4   Facsimile:    (213) 330-4501

5   FISHER & PHILLIPS LLP
    Rafael G. Nendel-Flores (SBN 223358)
6   *rnendel-Flores@laborlawyers.com*
    2050 Main Street, Suite 1000
7   Irvine, CA  92614
    Telephone:  (949) 851-2424
8   Facsimile:    (949) 851-0152

9   WARGO & FRENCH LLP
    Michael D. Kabat (pro hac vice)
10  *mkabat@wargofrench.com*
    Joseph W. Ozmer, II (pro hac vice)
11  *jozmer@wargofrench.com*
    J. Scott Carr (SBN 136706)
12  *scarr@wargofrench.com*
    999 Peachtree St. NE, 26th Floor
13  Atlanta, Georgia 30309
    Telephone: (404) 853-1500
14  Facsimile: (404) 853-1501

15  Attorneys for Defendant Time Warner Cable LLC

16          **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**

17
    EVE NERCIA GILLINGS, PATRICE        Case No. CV10-5565 AG (RNBx)
18  HAYES, RHANDI WALTERS, and
    PHILLIP BOND, individually and on    [Consolidated for limited purposes
19  behalf of all others similarly situated,   with:  SACV 11-00735-AG
                                          (RNBx)]
20                  Plaintiff,
                                          [Hon. Andrew J. Guilford]
21          v.                            CLASS ACTION

22  TIME WARNER CABLE LLC, TIME          **DEFENDANTS' OPPOSITION**
    WARNER NEW YORK CABLE LLC,           **TO MOTION FOR CLASS**
23  TIME WARNER CABLE INC., TIME         **CERTIFICATION**
    WARNER CABLE SHARED SERVICES
24  LLC, TIME WARNER SHARED              Date:    March 26, 2012
    SERVICES,                            Time:   10:00 a.m.
25                                        Court Room:  10D
                    Defendants.
26                                        Complaint Filed: June 25, 2010
                                          SAC Filed:  Sept. 7, 2010
27                                        Action Removed:  July 27, 2010

28                                        Trial Date: May 15, 2012

1

**TABLE OF CONTENTS**

2
I.      SUMMARY OF ARGUMENT ................................................................. 1

3
II.     FACTS ................................................................................................. 3

4
        A.      Clock In Procedures ............................................................... 4

5
        B.      TWC's Rounding Practice ...................................................... 4

6
        C.      TWC Does Not Require Pre-Shift Work ................................. 5

7
        D.      Plaintiffs' Allegations Regarding Clock Out Procedures Are
                Wrong ..................................................................................... 8

8
III.    DISCUSSION AND CITATION OF AUTHORITY ............................... 8

9
        A.      Standard: Rule 23 Imposes a Heavy Burden on Plaintiffs ............... 8

10
        B.      Plaintiffs Fail to Prove Their Rounding Theory Satisfies Rule
                23.......................................................................................... 10

11
                1.      Plaintiffs Cannot Prove Commonality or Predominance
12                      Because the Class Did Not Suffer a Common Injury............ 11

13              2.      Additional Individualized Inquiries Are Required To
                        Establish Liability Under a Facially Neutral Rounding
14                      Practice ........................................................................ 12

15              3.      Kronos Punches Will Not Provide Common Proof of
                        Rounding Losses................................................................ 18

16
        C.      Plaintiffs' Off-the-Clock Claim Is Not Certifiable Because
17              They Cannot Show Commonality, Typicality or Predominance ..... 19

18      D.      Individual Defenses Prevent Plaintiffs From Proving
                Predominance ........................................................................ 20

19
        E.      Plaintiffs Cannot Show Superiority With Regard to Either
20              Claim ..................................................................................... 21

        F.      Plaintiffs and Their Counsel Are Inadequate Representatives ........ 22
21
        G.      Plaintiffs' Wage Statement Claim Lacks Predominance ................ 23
22
        H.      There is No Evidentiary Basis for Certification of a Class
23              that Includes the Ontario, Hollywood and Garden Grove Call
                Centers ................................................................................... 24

24
IV.     CONCLUSION .................................................................................. 25

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>C</u>ASES

*Adair v. Wisconsin Bell, Inc.*, 2008 U.S. Dist. LEXIS 68942 (E.D. Wis.
    Sept. 11, 2008).................................................................................. 14

*Advanced-Tech Security Servs. v. Superior Court*, 163 Cal. App. 4th 700
    (2008) ................................................................................................ 24

*Bodner v. Oreck Direct, LLC*, No. C 06-4756, 2007 WL 1223777 (N.D.
    Cal. Apr. 25, 2007) .......................................................................... 29

*Burkhalter Travel Agency v. MacFarms Intern., Inc.*, 141 F.R.D. 144
    (N.D. Cal. 1991)............................................................................... 28

*Cervantez v. Celestica Corp.*, 253 F.R.D. 562 (C.D. Cal. 2008)......................... 11

*Contini v. United Trophy*, 2007 U.S. Dist. LEXIS 42510 (M.D. Fla. June
    12, 2007)........................................................................................... 13

*Cornn v. United Parcel Service, Inc.*, No. C03-2001, 2005 WL 2072091
    (N.D. Cal. Aug. 26, 2005) ............................................................... 21

*Coughlin v. Sears Hold. Co.*, No. SACV 08-00015, 2010 WL 4403089
    (C.D. Cal. Oct. 26, 2010) ................................................................ 13

*Delgado v. New Albertsons, Inc.*, No. SACV 08-0806 DOC (RNBx) (C.D.
    Cal. Dec. 15, 2009) ......................................................................... 27

*Doyel v. McDonald's Corp.*, No. 4:08-CV-1198, 2010 WL 3199685 (E.D.
    Mo. Aug.12, 2010).......................................................................... 16

*Drimmer v. WD-40*, 343 Fed. App'x 219 (9th Cir. 2009)................................ 25

*Drimmer v. WD-40*, No. 06-CV-900, 2007 WL 2456003 (S.D. Cal. Aug.
    24, 2007) .....................................................................................25, 26

*East v. Bullock's, Inc.*, 34 F. Supp. 2d 1176 (D. Az. 1998) ............................... 14

*Fisher v. Mich. Bell Tel. Co.*, 665 F. Supp. 2d 819 (S.D. Tex. 2009) ................. 11

*Flores v. CVS Pharmacy, Inc.*, 2:07-CV-05326, 2010 WL 3656807 (C.D.
    Cal. Sept. 7, 2010) .......................................................................... 20

*Flott v. Hair Salons, Inc.*, No. 8:09cv3211, 2010 WL 5093923 (D. Neb. Dec. 7, 2010) ............................................................................ 10

*General Tel. Co. v. Falcon*, 457 U.S. 147 (1982) .................................. 9

*Gil v. Solectron Corp.*, No. C-07-06414, 2009 WL 88346 (N.D. Cal. Jan. 9, 2009) .................................................................................. 11

*Gonzales v. Comcast Corp.*, No. 10-cv-01010, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ........................................................................ 13

*Hadjavi v. CVS Pharmacy, Inc.,* No. CV 10-04886, 2011 WL 3240763 (C.D. Cal. July 25, 2011) ............................................................ 16

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ............................ 23

*In re Taco Bell Wage and Hour Actions*, No. 1:07-cv-01314, 2011 WL 4479730 (E.D. Cal. Sep. 26, 2011) .................................................... 9

*Jiminez v. Domino's Pizza, Inc.*, 238 F.R.D. 241 (C.D. Cal. 2006) ................... 10

*Krueger v. Wyeth, Inc.*, No. 03cv2496, 2008 WL 481956 (S.D. Cal. Feb. 19, 2008) ................................................................................25, 27

*Lanzarone v. Guardsmark Holds., Inc.*, No. CV06-1136, 2006 WL 4393465 (C.D. Cal. Sept.7, 2006) ........................................................ 17

*Levias v. Pacific Maritime Ass'n*, No. 08-cv-1610-JPD, 2010 WL 358499 (W.D. Wash. Jan. 25, 2010) .......................................................... 23

*Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218 (S.D. Ala. 2008) ....................... 11

*Maddock v. KB Homes, Inc.*, 248 F.R.D. 229 (C.D. Cal. 2007) ......................... 24

*Nicholson v. UTI Worldwide, Inc.*, No. 3:09-cv-722, 2011 WL 1775726 (S.D. Ill May 10, 2011) .............................................................. 10

*Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136 (2011) ........................... 27

*Rosales v. El Rancho Farms*, No. 1:09-cv-00707, 2011 WL 6153276 (E.D. Cal. Dec. 12, 2011) ............................................................... 12

*Rothman v. Gen. Nutrition Corp.*, No. CV 11-03617, 2011 WL 690490 (C.D. Cal. Nov. 17, 2011) ............................................................. 22

*Sanchez v. Wal Mart Stores, Inc.*, No. 2:06-cv-02573, 2009 WL 1514435
(E.D. Cal. May 28, 2009)....................................................25, 27, 28

*Sloan v. Renzenberger, Inc.*, No. 10-2508, 2011 WL 1457368 (D. Kan.,
Apr. 15, 2011)............................................................................ 11

*Smith v. T-Mobile USA, Inc.*, No. CV 05-5274, 2007 WL 2385131 (C.D.
Cal. Aug. 15, 2007)...................................................................... 23

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg. Planning Agcy.*,
322 F.3d 1064 (9th Cir. 2003)...................................................... 26

*Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544 (D. Minn. 1999).................... 26

*Wal-mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .......... 9, 12, 14, 16, 17, 20

*Washington v. Joe's Crab Shack*, 271 F.R.D. 629 (N.D. Cal. 2010)..............12, 22

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) . 9, 10, 23, 24

### STATUTES

29 C.F.R. § 785.48(b) ......................................................................... 5

### OTHER AUTHORITIES

DLSE Enforc. Policies and Interp. Manual, §§ 47.1 and 47.2 .............................. 5

## I.   SUMMARY OF ARGUMENT

The Court should deny Plaintiffs' motion for class certification of their rounding and "off-the-clock" claims, as their own testimony, time records, records of the 200-employee sample and other undisputed facts prevent them from proving Rule 23(a)'s commonality and typicality requirements, much less Rule 23(b)'s more stringent predominance and superiority elements.  Because there is no common question or proof that could resolve liability on a classwide basis, impermissible mini-trials would be required to determine, among other things, whether each class member: (1) lost time due to rounding, and if so, why; and (2) worked off the clock, and if so, whether TWC suffered or permitted it.

Plaintiffs seek to certify a class of employees allegedly harmed by TWC's practice of rounding time entries to the nearest 15 minutes -- a practice approved by both the Department of Labor ("DOL") and the California Division of Labor Standards Enforcement ("DLSE").  Plaintiffs admit TWC's rounding practice is a facially neutral application of the DOL/DLSE-approved practice.  Notably, no court has held that facially neutral rounding is unlawful.  This is true even where some employees lose time due to rounding, as such loss could be caused by many factors, including employees' voluntary work habits and preferences.  Recognizing that fact, Plaintiffs contend that TWC violates the law because other alleged TWC policies necessarily cause its neutral rounding practice to deprive employees of time worked.  Specifically, Plaintiffs claim that employees lost time due to rounding:  (1) at the start of their shift, as they *allegedly* are required to come in a few minutes early to load computer programs; and (2) at the end of their shift, as they *allegedly* are not allowed to log out early, and *allegedly* lost time when calls went a few minutes beyond the end of the shift.  As an initial matter, Plaintiffs' theory fails because they present no evidence tying any loss from TWC's facially neutral rounding practice to the *alleged* common policies of which they complain.  That is, Plaintiffs do not submit a single declaration from a

putative class member claiming that any rounding loss they incurred was due to any shift-start, shift-end or other alleged common policies or practices upon which Plaintiffs rely, rather than their own preferred work routines.

More importantly, Plaintiffs' rounding theory is fundamentally and fatally flawed because **many employees are not losing time on rounding at all**, much less due to any shift-start or end policies.  For example, the evidence shows:

- **Plaintiffs admit that Plaintiff Walters had a net time gain from rounding**, as did many other employees in the 200-person sample;
- The alleged shift start policies do not cause employees to lose time, as 72 employees in the sample had a net time gain (or broke even) at shift start;
- Plaintiffs' end of shift theory is refuted by Plaintiff Bond's net gain of over 300 minutes at shift end, along with net gains by employees in the sample;
- Shift by shift rounding data also refutes Plaintiffs' theory, as Walters and Gonzales gained time or broke even on over 50% of their shifts, as did over half of the 200-person sample, with some gaining time/breaking even on over 80% of their shifts;
- Gonzales, Walters and many others gained time one year and lost the next, and the vast majority alternately gained and lost time in various months.

These (and other) facts defy Plaintiffs' claim that classwide policies necessarily cause employees to lose time due to rounding or explain why any particular employee lost time.  Thus, Plaintiffs cannot establish commonality, predominance or superiority because: (1) the putative class includes people who did not suffer the alleged harm; and (2) the *alleged* policies at issue cannot resolve liability on a classwide basis, as individualized analysis is required to determine whether each class member lost time from rounding and, if so, whether that loss was caused by the alleged common policies rather than his or her own preferred work routines.

Plaintiffs are also unable to prove commonality because their testimony and other facts show that the alleged common policies at the heart of their theory

do not exist.  Indeed, Plaintiffs' testimony proves there was no policy requiring them to be early or load programs prior to their shift, as they admit they could clock in through the phone at the start of their shift and load programs thereafter. Further, call centers had grace periods that allowed employees to potentially gain time by logging in after the start of their shifts or logging out prior to the end. The failure of the fundamental premises at the heart of Plaintiffs' rounding theory presents further grounds for denial of their Motion.

Finally, Plaintiffs' rounding theory also fails for lack of common proof because the Kronos in-punch records do not prove an employee was actually working from the in-punch forward.  Instead, Bond testified he would clock in and then "just sit there and wait, sip on coffee or whatever."  Thus, individual proof would be required to establish what each employee did after clocking in.

Plaintiffs' claim that they worked "off the clock" loading computer programs is also unsuitable for class treatment, as courts have repeatedly held that off-the-clock claims require individual inquiries to determine whether employees worked off the clock and, if so, whether the employer suffered or permitted that work.  This case is no different, given Plaintiffs' testimony that they clocked in *before* loading other programs, were not required to report early or log on to other programs prior to clocking in, and that arrival times, log in times and pre-shift routines varied based on individual preferences.

Finally, class treatment is also inappropriate because Plaintiffs are not adequate representatives, as their abandonment of claims in an attempt to aid commonality and achieve consolidation would prejudice the putative class by causing them to forever lose potential claims on res judicata grounds.  As many courts recognize, this renders Plaintiffs inadequate.

## II.   FACTS

Plaintiffs seek to represent a putative class of employees employed at Defendants' call centers in California whose duties included speaking with

customers by telephone and using a computer in connection with the telephone calls.  (Plfs' Mtn. for Class Cert. ("Plf Brief") at 1.)  The putative class members are current or former employees of TWC call centers in Culver City, Garden Grove, Hollywood, Ontario and Van Nuys, California.  (Sec. Am. Comp. (DE 28) at ¶10.)  None of the Plaintiffs worked at the Hollywood or Garden Grove call centers.  (Gillings Dep. 32:5-8; Gonzales Dep. 63:11-13; Bond Dep. 115:9-13; Hayes Dep. 17:24-18:4; Walters Dep. 39:20-22.)

Call center employees are divided into three types of representatives: Inbound Sales ("ISR"), Customer Care ("CCR") and Retention Representatives. (Lorenz Dec. ¶2.)  Gillings, Hayes and Walters were all ISRs and never held any other position for TWC.  (Gillings Dep. 31:6-17; Hayes Dep. 38:12-17; Walters Dep. 39:14-19.)  Bond claims he worked as an ISR, a CCR and later as a Retention Mentor.  (Bond Dep. 21:6-18; 44:10-13.)  Gonzales was a CCR. (Lorenz Dec. ¶3.)  None of the Plaintiffs worked as a Retention Representative.

## A. Clock In Procedures

TWC's Kronos timekeeping system is integrated with TWC's Avaya soft-phone system so that when a call center employee logs in to Avaya through his computer, he is automatically clocked in to Kronos.  (Hampton Dep. 20:5-13.) To log in to Avaya (and thus Kronos) employees typically:  (1) unlock their computer by pressing "control-alt-delete" and enter their system password; (2) click the Avaya "Log In" icon and verify that their pre-loaded Agent ID is correct; and (3) click the "log in" button.  (Lorenz Dec. ¶5.)  It generally takes less than 1 minute to unlock the computer and clock in.  (*Id.*)  If an employee chooses to log off their computer rather than lock it, it may take the employee 1-3 minutes to clock in.  (Hayes Dep. 53:1-18; Kim Dec. ¶15; Vieyra Dec. ¶16.)

## B. TWC's Rounding Practice

TWC follows a DOL and DLSE-approved practice whereby it rounds time punches to the nearest quarter hour at the beginning and end of the day, and

subtracts the time taken for lunch, which is also rounded.  (Hampton Dep. 33:5-34:14; 38:18-39:1.)  For example, if an employee clocks in at 8:03 a.m., the employee would gain 3 minutes because his time is rounded to 8:00 a.m.  If he clocks out at 5:01 p.m., that time is rounded to 5:00 p.m., with the employee losing one minute.  If he took a 63-minute lunch, TWC rounds that lunch period to 60 minutes, thus crediting him with 3 more minutes he did not work.  TWC then subtracts the one hour lunch from the 9 hours between the rounded in and out punches, paying the employee for 8 hours of work, even though the employee worked only 7 hours and 55 minutes.  As noted above, both the DOL and DLSE approve of this facially neutral rounding practice.  29 C.F.R. § 785.48(b); DLSE Enforc. Policies and Interp. Manual, §§ 47.1 and 47.2.

**Plaintiffs admit TWC's rounding practice is facially neutral**.  (Plf. Brief at 16 (identifying common question as "did Time Warner's facially neutral rounding policy violate the law").)  They further admit that under this facially neutral policy, rounding sometimes benefits an employee, causing him or her to gain time.  (Gillings Dep. 77:6-10; Bond Dep. 135:12-16; Hayes Dep. 76:18-77:1.)  In fact, Plaintiffs admit that **Plaintiff Walters had a net gain of 4 hours and 40 minutes due to rounding**.  (Carr Dec. ¶12.)

## C.    TWC Does Not Require Pre-Shift Work

Plaintiffs allege that TWC requires call center employees to be ready to receive calls at the start of their shift, that this allegedly compelled them to begin working slightly before their shifts to load various computer programs, and that this start-up time was then lost due to rounding.  (Plf. Brief at 14, 17.)  This theory is simply false, as Plaintiffs' own testimony establishes that there was no requirement to be early, much less load programs prior to the start of one's shift.

Indeed, Plaintiffs testified they were allowed to log in to Avaya/Kronos at the start of their shift and begin taking calls while loading their other programs, and that they in fact had done so.  (Hayes Dep. 56-57; Bond Dep. 111-12;

Gillings Dep. 42-43; Walters Dep. 63.)  Alternatively, they could log in to Avaya/Kronos and then remain in an auxiliary ("AUX") status so they could load other programs before taking phone calls.  (Gillings Dep. 47:13-18; Bond Dep. 140:8-13; Hayes Dep. 54:20-55:7.)  Various TWC supervisors confirm that employees need not arrive early at all, much less load programs before their shift.  (Kim Dec. ¶¶6-7; Vieyra Dec. ¶¶6-7; Lyons Dec. ¶¶6-7), and Plaintiffs admit they have never been disciplined for failing to log in or load programs before their shifts.  (Gillings Dep. 48:12-14; Bond Dep. 117:15-25.)

Plaintiffs' "early start up" theory also ignores or mischaracterizes other TWC policies.  For example, the applicable attendance policy states:  "As an employee you are expected to be at work as scheduled . . . This means being at your workstation at the start of your shift . . . ."  (DE 72-7, Ex. 2.)  This policy does not require an employee to be early.  (Gillings Dep. 50:8-11; Kim Dec. ¶10; Vieyra Dec. ¶11; Lyons Dec. ¶10.)  Moreover, there was no common policy even permitting -- much less requiring -- employees to load various programs prior to clocking in.  To the contrary, TWC policy provides, in bold and italicized language, that:  ***Working off the clock is strictly prohibited***.  (Hampton Dep., Ex. 509; Vieyra Dec. ¶6.)  Plaintiff Gonzales expressly acknowledged this policy in her "Employee Timekeeping Acknowledgement Form" -- a one-page document each new employee must execute.  (Gonzales Dep., Ex. 6; Gonzales Dep. 102:3-105:22.)  Thus, if an employee chose to open other programs before clocking in, he did so in violation of TWC policy.

Further undercutting Plaintiffs' "early start up" theory, call centers generally allow a "grace period" so that an employee can clock in a few minutes after his scheduled shift start without being tardy.  For example, the Van Nuys and Ontario call centers all allow employees to clock in up to 3 minutes late.  (Vieyra Dec. ¶8; Kim Dec. ¶8; Lyons Dec. ¶10.)  Moreover, in 2008 the Hollywood and Ontario call centers utilized a 5-minute grace period.  (Vieyra

Dec. ¶¶8, 10.)  Indeed, *contrary to their counsel's representation*, Gillings and Hayes admitted various call centers had grace periods.  (Gillings Dep. 97:7-16; Hayes Dep. 57:4-15.)[1]

Even beyond the grace periods, each supervisor has discretion to determine whether a late clock-in should generate a tardy occurrence.  (Hampton Dep. 48:1-6; 50:18-23; Vieyra Dec. ¶9; Kim Dec. ¶9.)  The reasons for excusing a tardy "could vary by location and by supervisor," and TWC expects only that the supervisor have some "rational basis" for not counting a tardy as an occurrence under the policy.  (Hampton Dep. 51:7-11; 52:12-16.)  Thus, Plaintiffs mischaracterize the record when they claim that supervisors have "essentially no discretion to enforce attendance policies."  (Plf. Brief at 14 n.4.)

Plaintiffs' testimony also establishes that, once employees arrive at their call center, their routines vary widely based on personal preferences.  (Gillings Dep. 51:23-52:1; Bond Dep. 119:3-14; Walters Dep. 46:25-13.)   If employees choose to arrive early, they are free to use that time as they see fit.  (Vieyra Dec. ¶12; Kim Dec. ¶11.)  Many employees who arrive early choose to socialize, get coffee or water, or otherwise engage in personal activities.  (Gillings Dep. 51-52; Vieyra Dec. ¶12; Kim Dec. ¶11.)  In fact, Bond testified he would clock in and load programs simultaneously, and then "just sit there and wait, sip on coffee or whatever."  (Bond Dep. 119:3-14.)

Plaintiffs also testified that employees had varying log in routines and that these too were based on personal preference.  (Gillings Dep. 20:4-12; 40:17-41:1; 45:9-24; 47:13-48:2; Hayes Dep. 56:13-57:2; Walters Dep. 51:22-52:4; Bond Dep. 119:1-14.)  Given TWC's prohibition against off the clock work, however, TWC expects employees to clock in to Avaya/Kronos prior to loading other

---

[1] Plaintiffs' Brief asserts that TWC has "no grace period for tardy arrivals."  (Plf. Brief at 13.)  TWC's representative testified only that TWC has no *general* grace period governing *all* of the call centers.  (Hampton Dep. 49:4-7.)  As shown, however, the different call centers have their own grace period policies.

programs.  (Kim Dec. ¶¶4, 6; Vieyra Dec. ¶¶4, 6; Lyons Dec. ¶¶4, 6.)  Indeed, **Gillings and Walters testified that their regular practice was to clock in to Avaya/Kronos <u>first</u>; thus they did not load programs off the clock**.  (Gillings Dep. 20:4-12; 40:17-41:1; 45:9-11; Walters Dep. 51:22-52:4.)

The time it takes to load programs varies based on the employee's method, experience and familiarity with computers.  (Bond Dep. 121-23; Gillings Dep. 41.)  It is undisputed, however, that employees could start their computers, clock in and load the necessary programs in 3 to 5 minutes.  (*E.g.*, Leviant Dec. (DE 60) ¶28; Hayes Dep. 53; Walters Dep. 55-57; Gillings Dep. 39-40.)

**D.**   <u>**Plaintiffs' Allegations Regarding Clock Out Procedures Are Wrong**</u>

Plaintiffs also claim that TWC's clock out procedures cause rounding to disadvantage call center employees because they cannot clock out even 1 minute early, and thus rounding will necessarily work against them at the end of their shifts.  (Plf. Brief at 13-14.)  That is untrue.  In fact, Plaintiffs repeatedly swore in their interrogatory responses that employees were allowed to clock out 1 minute before the end of their shift.  (Carr Dec., Exs. 9-12, Plfs. Inter. Resp. Nos. 5-8, 10-11, 15-16, 18.)  Further, certain call centers have grace periods at the end of the shift that allow employees to clock out even earlier.  For example, employees at the Ontario call center can clock out up to 3 minutes before the end of their shift.  (Vieyra Dec. ¶20; Lyons Dec. ¶19.)

**III.   DISCUSSION AND CITATION OF AUTHORITY**

**A.**   <u>**Standard:  Rule 23 Imposes a Heavy Burden on Plaintiffs**</u>

Pursuant to Rule 23(a), a class can be certified only if, *inter alia*, "(2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable."  *General Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982).  Plaintiffs bear the burden

1  of proving that each element of Rule 23 is satisfied.  *Zinser v. Accufix Research*
2  *Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

3       Plaintiffs misstate their burden under Rule 23(a)(2) when they assert that
4  the "requirements for finding commonality . . . [are] minimal," and suggest the
5  Court should essentially avoid analyzing the evidence presented by the parties
6  and instead simply adopt Plaintiffs' position on the alleged common policies at
7  issue.  (Plf. Brief at 2-3, 5.)  Indeed, in *Wal-mart Stores, Inc. v. Dukes*, 131 S. Ct.
8  2541 (2011), the Supreme Court explained that "Rule 23 does not set forth a mere
9  pleading standard," and instead requires a "rigorous analysis" of whether the
10 merits of the plaintiff's claims are amenable to class wide resolution.  *Id.* at 2551.
11 Plaintiffs must prove that all class members "suffered the same injury," and that
12 such injury is "capable of class wide resolution" in proceedings that "generate
13 common *answers*" that "resolve an issue that is central to the validity of the
14 claims in one stroke."  *Id.*  (emphasis in original).  *See also In re Taco Bell Wage*
15 *and Hour Actions*, No. 1:07-cv-01314, 2011 WL 4479730, *3-4 (E.D. Cal. Sep.
16 26, 2011) (applying *Dukes*' "one stroke" requirement in wage-hour context).

17      In addition to proving the elements of Rule 23(a), Plaintiffs must also
18 prove Rule 23(b)(3)'s more stringent requirement that issues common to the class
19 "predominate over any questions affecting only individual members" and that the
20 class action be "superior" to other methods of adjudicating the controversy.  The
21 predominance inquiry looks to "the substantive issues raised by Plaintiffs and . . .
22 the proof relevant to each issue."  *Jiminez v. Domino's Pizza, Inc.*, 238 F.R.D.
23 241, 251 (C.D. Cal. 2006).  Where, as here, those issues require individual proof
24 for each member's claim, certification is inappropriate.  *Zinser*, 253 F.3d at 1189.

25      As shown *infra,* Plaintiffs' claims were not amenable to certification before
26 *Dukes*, and certainly not after.  Indeed, Plaintiffs cannot satisfy Rule 23(a)'s
27 commonality or typicality elements, much less Rule 23(b)'s predominance and
28 superiority requirements, nor are they adequate representatives.

**B.**    **Plaintiffs Fail to Prove Their Rounding Theory Satisfies Rule 23**

Plaintiffs' assertion that "[r]ounding-based claims fundamentally present a matter of uniform application of employer payroll policies and are frequently certified" is a gross overstatement.  In fact, Plaintiffs cite **no case** certifying a Rule 23 class where the rounding policy was facially neutral.  Rather, of the seven cases Plaintiffs cite (only 3 of which were Rule 23 cases), **six** involve rounding policies that were **not** facially neutral and **always** worked to the employees' detriment.[2]  The **only** case Plaintiffs cite involving a facially neutral policy is *Fisher v. Mich. Bell Tel. Co.*, 665 F. Supp. 2d 819 (S.D. Tex. 2009) -- an FLSA case where the court specifically noted that *conditional* certification, unlike Rule 23, is a "fairly lenient" standard.  *Id.* at 825.  Further, the *Fisher* court conditionally certified a class based on declarations from 67 employees.  *Id.* at 827.  Here, Plaintiffs did not submit a single employee declaration.

In addition to *Fisher,* Plaintiffs rely on three other cases involving the far more lenient FLSA conditional certification standard, rather than Rule 23's "rigorous analysis," and all involve non-neutral policies.  These cases are inapposite, as they do not consider Rule 23's commonality and predominance requirements -- issues that are outcome determinative here.[3]

In short, the rounding cases upon which Plaintiffs rely do not support certification here, as they shed no light on the commonality and predominance inquiries in the context of a facially neutral rounding policy.  As shown below,

---

[2]  *See Flott v. Hair Salons, Inc.*, No. 8:09cv3211, 2010 WL 5093923, *1 (D. Neb. Dec. 7, 2010) (rounding time to nearest hour only when employees clocked in *before* scheduled shift); *Nicholson v. UTI Worldwide, Inc.*, No. 3:09-cv-722, 2011 WL 1775726, *1 (S.D. Ill May 10, 2011) (same); *Cervantez v. Celestica Corp.*, 253 F.R.D. 562 (C.D. Cal. 2008) (mentioning "rounding" only once, and noting that non-neutral policy "erase[d] employees' time when they arrive[d] early or [left] late, but record[ed] each minute that employees arrive late or leave early").

[3]  *Sloan v. Renzenberger, Inc.*, No. 10-2508, 2011 WL 1457368 (D. Kan., Apr. 15, 2011) (conditionally certifying FLSA class where rounding policy acted solely to employees' detriment); *Gil v. Solectron Corp.*, No. C-07-06414, 2009 WL 88346, *1 (N.D. Cal. Jan. 9, 2009) (same); *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1221 (S.D. Ala. 2008) (same).

Plaintiffs cannot satisfy their burden to prove commonality or predominance.

  1.  *Plaintiffs Cannot Prove Commonality or Predominance Because the Class Did Not Suffer a Common Injury*

  Plaintiffs ask the Court to certify a class of all Defendants' employees in California "whose job duties . . . included speaking with customers by telephone and using a computer in connection with the telephone calls." (Plf. Brief at 1.) Certification of that class would be improper, as Plaintiffs cannot show that the class sustained a common injury. Indeed, they concede that TWC's facially neutral rounding practice affects every employee differently, and it is undisputed that Walters benefitted from TWC's rounding policy, as did numerous other members of the putative class. (Kabat Dec. ¶3(a); Carr Dec. ¶12; Walters Dep. 151.) Thus, Plaintiffs cannot establish Rule 23(a)'s commonality requirement because **there is no common injury, as the class includes individuals like Walters with no injury at all**. *Dukes*, 131 S. Ct. at 2551; *Rosales v. El Rancho Farms*, No. 1:09-cv-00707, 2011 WL 6153276, at *6, 20-31 (E.D. Cal. Dec. 12, 2011) (recommending denial of certification where plaintiffs failed to present proof of common policy that caused same injury to each putative class member).

  These facts also show that common issues do not predominate, as analysis of every time entry of every class member for every work day is required to answer the fundamental question of whether he or she lost time due to rounding.[4] *Coughlin v. Sears Hold. Co.*, No. SACV 08-00015, 2010 WL 4403089, *7 (C.D. Cal. Oct. 26, 2010) (denying certification because individual issues predominate where court must engage in calculation to determine if putative class members were injured by challenged policy); *Gonzales v. Comcast Corp.*, No. 10-cv-01010, 2012 WL 10621, *19 (E.D. Cal. Jan. 3, 2012) (certification denied where

---

[4] The ability to conduct this inquiry with electronic documents "does not mean that these are issues that are not dependent on an individualized inquiry." *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 640 (N.D. Cal. 2010).

1  individual inquiries needed to determine if class members suffered harm and

2  plaintiffs presented "no method for showing causation and across-the-board

3  impact").  Thus, because Plaintiffs can prove neither commonality nor

4  predominance, their Motion should be denied.

5          2.     _Additional Individualized Inquiries Are Required To Establish_

6                 _Liability Under a Facially Neutral Rounding Practice_

7          Predominance and commonality are further lacking here because, after the

8  individualized inquiry to determine whether an employee lost time at all, further

9  individualized analysis is required to determine **why** each employee clocked in or

10  out at times that harmed him.  That is, were each person's log in and out times

11  (and thus rounding's impact) determined by his or her own preferred work habits,

12  or -- as Plaintiffs' contend -- did TWC policies cause the employee to log in and

13  out at times that caused him to lose minutes due to rounding.

14          Plaintiffs admit TWC's rounding policy is a facially neutral application of

15  a DLSE-approved rounding practice, and **no court has held that a facially**

16  **neutral rounding practice is unlawful**.[5]  This is true even if an employee

17  happens to lose time under a facially neutral rounding practice.[6]  Thus, Plaintiffs

18  do not argue that TWC's neutral rounding policy, standing alone, is unlawful.

19  (_See_ Plf. Brief at 1 ("Defendants utilized a timeclock rounding methodology _with_

20  _associated policies_ that, over time, resulted in an underpayment of wages . . .")

21

22  [5]  In fact, courts have upheld rounding practices identical to TWC's practice
23  here.  _E.g., Contini v. United Trophy_, 2007 U.S. Dist. LEXIS 42510, *11 (M.D.
    Fla. June 12, 2007) (upholding rounding to nearest quarter hour because it "was
    equally applied to all Defendant's employees, and worked both to benefit and
24  detriment of employees (_i.e._ you could gain or lose up to 7 minutes of time per
    time entry)"); _Adair v. Wisconsin Bell, Inc._, 2008 U.S. Dist. LEXIS 68942, *30-
25  33 (E.D. Wis. Sept. 11, 2008) (approving rounding to nearest quarter).

26  [6]  _See East v. Bullock's, Inc._, 34 F. Supp. 2d 1176, 1184 (D. Az. 1998) (DOL's
    presumption that rounding compensates employees "for all time they have
27  actually worked" is not actual requirement that rounded time equal unrounded
    time, and holding that rounding practice is not illegal merely because it "may not
28  credit employees for all the time actually worked," so long as "it also credits
    employees for time not actually worked").

(emphasis added).  Rather, they argue that other TWC policies -- primarily certain *alleged* attendance requirements -- force log in and log out times that round to employees' detriment.  (Plf. Brief at 12-13.)  Because "commonality" requires them to show a common policy that would resolve liability as to the class, Plaintiffs must prove the *alleged* policies caused each class member to lose time. They cannot do so.

### a.   *The Common Policies Upon Which Plaintiffs Rely Do Not Exist*

Plaintiffs' rounding theory fails because the common policies on which it is premised do not exist.  Absent a common policy that could resolve liability in one stroke, the commonality requirement is lacking.  *Dukes*, 131 S. Ct. at 2551.

Plaintiffs theorize that TWC's alleged attendance and related policies necessarily cause each putative class member to lose time due to rounding. Specifically, Plaintiffs allege that employees were:  (1) required to arrive early to load computer programs so they would be ready to take calls at the beginning of their shifts, and that this time would be lost due to rounding; and (2) forbidden to log out early, making it unlikely that they would gain time at the end of their shift.  (Plf. Brief at 12-13, 17-18.)  As shown in the chart below, this theory is fatally flawed because it is based on a series of false premises.

| Plaintiffs' Theory | The Truth |
|---|---|
| Employees must load computer programs prior to the start of their shift so they are ready to immediately receive customer calls at the start of their shift. | Plaintiffs admitted they: (1) were permitted to clock in through their phone at shift start and then load programs while taking calls; (2) alternatively, could clock in through their phone at shift start and load programs while in an AUX mode; and (3) they had done both.[7] |
| Employees must arrive early to prepare their work stations. | TWC does not require employees to show up early -- it simply requires them to be on time. Plaintiffs were never disciplined for not showing |

[7]  The facts set forth in the chart are proven with evidentiary cites in Section II C.

| Plaintiffs' Theory | The Truth |
|---|---|
| | up early. |
| There was no "grace period" that allowed employees to log in after their shift start without being tardy. | Call centers had their own grace period policies. For example, in 2008, Hollywood and Ontario employees enjoyed a 6 minute grace period. Ontario and Van Nuys employees currently enjoy a 3 minute grace period. |
| Supervisors had no discretion regarding tardies. | Supervisors had discretion to excuse tardies, and the reasons for doing so could vary among supervisors and call centers. |
| Employees could not clock out prior to the end of their shifts. | Plaintiffs' interrogatory responses admit they could log out 1 minute early.

Employees at various call centers enjoy end of shift grace periods.  For example, Ontario allows employees to log out up to 3 minutes early. |
| Employees necessarily lost time because customer calls at the end of the shift went a few minutes over the shift, but not long enough to result in a rounding benefit. | It is not uncommon for employees to gain time when a call lasts more than 7, but less than 15, minutes beyond the end of a shift.  (Vieyra Dec. ¶21; Gillings Dep. 53:12-17.)

Employees could (and did) "stretch" their last call so that it ended at the end of their shift. (Walters Dep. 71:22-73:4; Lyons Dec. ¶20.)

Employees could log out 1-3 minutes early.

Some supervisors allow employees to use an AUX code prior to the end of the shift to ensure they do not get a call that went beyond the end of their shift.  (Kim Dec. ¶19.) |

Thus, the evidence proves that the alleged common policies upon which Plaintiffs rely do not exist.  Accordingly, Plaintiffs cannot satisfy their burden to prove commonality under Rule 23(a).  *See Dukes*, 131 S. Ct. at 2554–55 (denying certification where plaintiff failed to show theory of liability from policy that "pervades the entire company"); *Hadjavi v. CVS Pharmacy, Inc.,* No. CV 10-04886, 2011 WL 3240763 (C.D. Cal. July 25, 2011) (denying certification where

1   plaintiffs "failed to demonstrate that Defendants had a uniform or common policy

2   in place that 'prevented' employees from taking meal and rest breaks").  Further,

3   the lack of a classwide policy explaining why employees chose to log in or out

4   when they did highlights the predominance of individual issues here, thus Rule

5   23(b) is not satisfied.  *Washington,* 271 F.R.D. at 641 ("In the absence of any

6   common policy, an individualized inquiry will be required . . . . For this reason

7   alone, common issues do not predominate"); *Doyel v. McDonald's Corp.,* No.

8   4:08-CV-1198, 2010 WL 3199685, *9 (E.D. Mo. Aug.12, 2010) ("the alleged

9   violations asserted by plaintiffs result not from company-wide policies, but from

10  alleged isolated instances of managers deviating from McDonald's lawful policies

11  which require employees to be paid for all time worked"); *Lanzarone v.*

12  *Guardsmark Holds., Inc.*, No. CV06-1136, 2006 WL 4393465, *4 (C.D. Cal.

13  Sept.7, 2006) (certification inappropriate where "the direct evidence and

14  declarations submitted compel the conclusion that Guardsmark has no policy that

15  violates the law," and therefore, "the bulk of the issues that are truly in dispute in

16  this matter are inherently individualized").

17          **b.  *Plaintiffs Fail to Show the Alleged Common Policies Caused***

18              ***Employees to Log In or Out at Times that Favored TWC***

19          Even if Plaintiffs could prove the existence of the alleged common policies

20  on which their theory depends (and they cannot), commonality and predominance

21  would still be lacking because proof of those policies does nothing to resolve the

22  question of liability on a classwide basis.  Indeed, the fact that Walters and other

23  employees enjoyed a net benefit from rounding disproves Plaintiffs' theory.

24          Moreover, Plaintiffs offer no proof that the alleged policies of which they

25  complain actually explain the log in and out times of any particular employee.

26  Notably, Plaintiffs do not offer a declaration from a single putative class member

27  who says these policies caused them to clock in and out at times that made

28  rounding work to their disadvantage.  Instead, Plaintiffs simply presume it to be

so. *Dukes* leaves no doubt that such presumptions do not satisfy Plaintiffs' Rule 23 burden. 131 S. Ct. at 2555 (holding that evidence of liability as to one individual does not raise inference of classwide liability even with classwide statistical evidence where other potential causes of harm exist).

Further, even if presumptions provided a basis to certify a Rule 23 class, it would be inappropriate to do so here because there is no basis to presume that TWC's policies caused every class member to log in or out at times that favored TWC. Rather, myriad factors impact an employee's clock in and out times, most of which turn on the employee's own preferred work routine, rather than an attendance policy or other mandate by TWC.[8]

In fact, as shown in the following chart, analysis of Plaintiffs' time records, as well as those from the 200-person sample, refutes Plaintiffs' speculative theory that TWC's alleged policies necessarily caused employees to lose time at all, much less at the start and end of every shift:

| Plaintiffs' Presumption | The Evidence |
|---|---|
| TWC's alleged common policies necessarily and systematically cause employees to lose time due to rounding. | Plaintiffs admit that Plaintiff Walters had a net gain of 4 hours and 40 minutes (Carr Dec. ¶12); one member of the sample group gained 990 minutes, 11 others gained over 200 minutes, and 48 gained time or broke even overall. (Kabat Dec. ¶3(a).) |
| | Plaintiff Walters lost time in 2008 but gained time in 2009. Plaintiff Gonzales gained time in |

---

[8]   Individual factors impacting clock in times include: (1) a person's preference as to arrival time, which may be impacted by traffic; (2) whether a person arriving early chooses to load programs or instead socialize, get coffee, etc.; (3) the extent to which the employee made use of any grace period; and (4) how long it took the employee to clock in, which varied based on skill and whether she chose to shut down or lock her computer. (Hayes Dep. 41-42; 81-82; Bond Dep. 119-120; Walters Dep. 44-45; Gillings Dep. 51-52.) Likewise, individual factors impacting clock out times include whether the employee: (1) made use of any early clock out grace periods; (2) went on AUX status before shift end ; (3) stretched out her last call to avoid taking another; (4) how close to shift end the last call was taken and the call length; and (5) the expertise of the employee handling the call.

| Plaintiffs' Presumption | The Evidence |
|---|---|
| | 2008 but lost time in 2009.  (Kabat Dec. ¶3(e).)  81% of the sample gained time in some months.  (Kabat Dec. ¶3(b).) |
| TWC's alleged policies necessarily cause employees to lose time due to rounding at the start of their shifts. | 72 employees in the sample had either a net gain of time or broke even at the start of their shifts, with 30 of them gaining over 100 minutes.  (Kabat Dec. ¶3(c).) |
| TWC's alleged policies necessarily cause employees to lose time due to rounding at the end of their shifts. | Plaintiff Bond had a net gain of 314 minutes at the end of his shift, while another employee gained over 1400 minutes.  (Kabat Dec. ¶3(d).) |
| TWC received the benefit of a "few additional minutes of work from each employee every shift."  (Plf. Brief at 18.) | Plaintiff Walters broke even or gained time on 58% of her shifts, Gonzales on 55%, Hayes on 48%, and Bond on 44%.  (Kabat Dec. ¶3(f).)  Over half of the 200-person sample gained time/broke even on at least 50% of their shifts, with some gaining time/breaking even on over 80% of their shifts.  (Kabat Dec. ¶3(h).) |

As this chart demonstrates, Plaintiffs cannot show that the common policies of which they complain caused any harm at all, much less a common harm.[9]

Plaintiffs also analyzed the 200-person sample, but focus heavily on the total amount of time lost by the 200 people due to rounding.  (Plf. Brief at 14-15.)  That analysis is inapposite to class certification for several reasons.  First, and most importantly, such data is not helpful because it does nothing to show that each member of the class suffered any injury at all, much less a common one, nor can it explain why any particular class member lost time (*i.e.*, due to his/her own preferred routine and work habits, or some TWC policy that led to

---

[9]  The above disparities occurred in a relatively homogenous sample, as it was drawn from only two call centers and only included one job title -- ISRs.  (Kabat Dec. ¶2.)  Logically, the disparities in the above data would be even greater if all five call centers and all three job positions were considered.

disadvantageous log in and out times).  Second, Plaintiffs' argument regarding the average time lost is misleading, as almost 30% of the time lost due to rounding was lost by just 5% of the sample (10 people), almost 50% of the time lost was lost by just 10% of the sample (20 employees) and 82% of the time lost was lost by just 25% of the sample (50 people).  (Kabat Dec. ¶3(g).)

In short, the above data and other facts confirm that individual factors, not classwide policies, drive when putative class members are logging in and logging out and, thus, how those members are impacted by TWC's facially rounding practice.  Plaintiffs' inability to show causation and a common harm, as well as the need for individualized inquiries, renders them unable to satisfy Rule 23's commonality and predominance requirements, and thus certification is inappropriate.  *Dukes,* 131 S. Ct. at 2551 (certification inappropriate where plaintiffs failed to demonstrate classwide proceeding would generate "common answers apt to drive resolution of litigation"); *Flores v. CVS Pharmacy, Inc.*, 2:07-CV-05326, 2010 WL 3656807, *5 (C.D. Cal. Sept. 7, 2010) (where "the issues contributing to [Plaintiffs' employment claims] are contingent on a number of human factors and individual idiosyncrasies and have little to do with an overarching policy," no common policy or practice supports certification).

### 3.   *Kronos Punches Will Not Provide Common Proof of Rounding Losses*

Commonality and predominance are also lacking because, *even setting aside all of the above issues*, the Kronos punches upon which Plaintiffs rely do not provide classwide proof of actual hours worked.  That is, employees were not always engaged in compensable work from the time of their in-punch forward.  To the contrary, Bond testified that his practice was to simultaneously load Avaya/Kronos and his other tools and then "just sit there and wait, sip on coffee or whatever."  (Bond Dep. 119:3-14.)  Thus, individualized analysis is necessary to determine whether each employee was engaged in compensable work after clocking in.  *Cornn v. United Parcel Service, Inc.*, No. C03-2001, 2005 WL

2072091 (N.D. Cal. Aug. 26, 2005) (denying certification and finding clock-in records insufficient classwide proof where class members "perform a variety of non-work-related tasks, such as socializing, reading the newspaper, and drinking coffee or tea, after punching in but before their scheduled start times.")

**C.      Plaintiffs' Off-the-Clock Claim Is Not Certifiable Because They Cannot Show Commonality, Typicality or Predominance**

Plaintiffs also seek certification of their claim for time allegedly spent working "off-the-clock" logging in to their computers and loading various programs prior to clocking in.  Notably, federal courts routinely deny class treatment of such claims because questions of whether someone worked unpaid time and whether their employer knew about it are inherently individualized. *Cornn*, 2005 WL 2072091 at *5.  Plaintiffs apparently recognize this claim cannot be certified, as they devote a mere two paragraphs of argument to it and fail to cite any analogous caselaw specifically supporting their theory.

Plaintiffs' testimony establishes the **lack** of any common policy or practice requiring employees to load programs off the clock and thus prevents them from proving commonality, typicality or predominance.  Indeed, **Plaintiffs testified they actually clocked into Avaya/Kronos first**, and then loaded other programs while **on** the clock.  (Hayes Dep. 55:16-57:2; Gillings Dep. 20:4-12, 40:17-41:1, 45:9-11; Walters Dep. 51:22-52:4; Bond Dep. 119:1-14.)  Moreover, their testimony and other evidence also establish that employees can (and do) log in at the start of their shift and then load other computer programs thereafter.  That is, employees can clock in to Avaya/Kronos at shift-start and then either: (1) "auto-in" to make themselves available for calls while loading programs simultaneously; or (2) remain in an auxiliary mode while loading other programs. (Gillings Dep. 45:13-24, 47:13-48:2; Bond Dep. 111:2-112:6; Hayes Dep. 56:13-57:2; Walters Dep. 60:3-62:6; Lyons Dec. ¶5.)  These facts make clear that determining the threshold issue of whether any employee worked off the clock

1   requires an individualized inquiry as to each class member.[10]

2        Given these undisputed facts, it is not surprising that Plaintiffs fail to

3   articulate any method for proving, on a classwide basis, that employees did

4   compensable work off the clock.  Absent such common proof, the Court would

5   have to undertake a mini-trial for each class member to determine whether they

6   worked off the clock and, if so, whether TWC suffered or permitted that work

7   (*i.e.*, was aware that employees were working without clocking in).  The need for

8   such individualized inquiries destroys commonality, and also prevents Plaintiffs

9   from proving the more stringent predominance requirement.  *See Washington*,

10  271 F.R.D. at 642 (denying class certification where class claims could not be

11  resolved by reference to common proof and required individual testimony from

12  each class member); *Rothman v. Gen. Nutrition Corp.*, No. CV 11-03617, 2011

13  WL 690490, at *5 (C.D. Cal. Nov. 17, 2011) (commonality lacking where facts

14  fail to show harm was result of defendant's common course of conduct).

15       Moreover, these same facts show that Plaintiffs cannot satisfy Rule 23(a)'s

16  typicality requirement, given that they did not work off the clock.  *Hanon v.*

17  *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (typicality requires named

18  plaintiffs to "have the same or similar injury" as other class members).  Thus,

19  certification is not appropriate on Plaintiffs' off-the-clock claim.

20  **D.   Individual Defenses Prevent Plaintiffs From Proving Predominance**

21       In addition to the fact that Plaintiffs' rounding and off-the-clock claims are

22  not subject to common proof, class certification is also inappropriate due to

23  individualized defenses against each class member.  *See Zinser*, 253 F.3d at 1190

24  (predominance not satisfied if case requires "separate adjudication of each class

---

26  [10]  As set forth above, many other facts refute Plaintiffs' "early start up" premise,
27  including, without limitation:  TWC's prohibition against off-the-clock work; the
    grace periods at various call centers; the lack of disciplinary action for not
28  arriving early or not loading programs prior to shift-start; and the freedom given
    to employees who choose to arrive early to use that time as they see fit.

member's individual claim or defense").  First, many of the putative class members' off-the-clock claims would be subject to a *de minimis* defense, given Plaintiffs' testimony that it took only 3-5 minutes to complete the alleged off-the-clock work at issue.[11]  Consideration of a *de minimis* defense is, by its very nature, individualized.  *Smith v. T-Mobile USA, Inc.*, No. CV 05-5274, 2007 WL 2385131, *8 (C.D. Cal. Aug. 15, 2007); *Levias v. Pacific Maritime Ass'n*, No. 08-cv-1610-JPD, 2010 WL 358499, *12 (W.D. Wash. Jan. 25, 2010) (certification inappropriate where individual inquiries are required to determine if unpaid time was *de minimis*).  Second, many of the claims of the putative class members are likely to be subject to a "set-off" based on the fact that many call center employees were overpaid due to Defendants' practice of counting vacation and holiday time as hours worked when calculating overtime payments.  *Advanced-Tech Security Servs. v. Superior Court*, 163 Cal. App. 4th 700, 707-08 (2008) (holding extra premium payments can be used to offset alleged overtime underpayments).   Because these defenses require individualized analysis for each class member, common issues do not predominate and class treatment is therefore inappropriate.

**E.    Plaintiffs Cannot Show Superiority With Regard to Either Claim**

        The discussion above showing the need for numerous individualized inquiries on both the rounding and off-the-clock claims, as well as individual defenses, prevents Plaintiffs from proving that a class action would be superior to other methods of adjudication.  That is, "if each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'"  *Zinser*, 253 F.3d at 1192; *Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 248 (C.D. Cal. 2007) ("Because the Court

---

[11]   The *de minimis* defense provides that "insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded."  DLSE 47.2.1.  This defense and its applicability to Plaintiffs' own claims are fully briefed in Defendants' Motion for Summary Judgment.  (DE 74.)

concludes that individual issues predominate in the instant case, it is clear that class action would not be superior to other methods of adjudication.")

**F.     Plaintiffs and Their Counsel Are Inadequate Representatives**

"Rule 23(a)(4) permits the certification of a class action only if the representative parties will fairly and adequately protect the interests of the class." *Drimmer v. WD-40*, 343 Fed. App'x 219, 221 (9th Cir. 2009).  "**A class representative is not an adequate representative when [it] abandons particular remedies to the detriment of the class**." *Drimmer v. WD-40*, No. 06-CV-900, 2007 WL 2456003, *3 (S.D. Cal. Aug. 24, 2007) (emphasis added).  Claim abandonment conflicts with the interests of absent class members when principles of *res judicata* could foreclose the class from raising the abandoned claims.  *Id.*  Thus, courts deny class certification on adequacy grounds when representatives drop or fail to raise claims at the expense of absent class members.  *E.g.*, *Krueger v. Wyeth, Inc.*, No. 03cv2496, 2008 WL 481956, *3-4 (S.D. Cal. Feb. 19, 2008) (abandoning claim to detriment of class renders representative inadequate); *Sanchez v. Wal Mart Stores, Inc.*, No. 2:06-cv-02573, 2009 WL 1514435, *3 (E.D. Cal. May 28, 2009) (limiting class members' claims renders plaintiff inadequate representative).

Moreover, courts caution that "representatives who tailor[] the class claims in an effort to improve the possibility of demonstrating commonality obtain[] this essentially cosmetic benefit only by presenting putative class members with significant risks of being told later that they had impermissibly split a single cause of action."  *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 551 (D. Minn. 1999) ("possible prejudice to class members" caused by representatives' reserving claims to make class certification more likely was "simply too great for the Court to conclude that the named Plaintiffs' interest are aligned with those of the class").  This is exactly what Plaintiffs did here.

Indeed, to achieve consolidation of their claims with *Gonzales*, the *Gillings* representatives decided not to pursue certain claims on a classwide basis.  (ECF 29 ¶¶12-13.)  Specifically, the *Gillings* Plaintiffs maintained their own claims "to the extent they allege that Defendants incorrectly calculated Plaintiffs' overtime rates of pay," while abandoning such claims for the class.  *Id.*  Likewise, to more easily consolidate her claims with those of *Gillings*, Gonzales dismissed **five** claims for – (1) missed meal breaks, (2) missed rest breaks, (3) payment of wages by out-of-state pay checks, (4) inaccurate wage statements and (5) unfair business practices.  (ECF 29 in *Gonzales*, ¶¶10-11.)  If a class is certified, the Plaintiffs' decision to jettison the aforementioned claims will forever foreclose the class from recovering on such claims, as resolution of the current litigation will bar such claims on res judicata grounds.  *See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg. Planning Agcy.*, 322 F.3d 1064, 1078 (9th Cir. 2003) (claims "based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action").  Thus, the named Plaintiffs and their counsel are inadequate representatives of the interests of the class, and class certification should be denied.  *E.g.*, *Drimmer*, 2007 WL 2456003 at *3; *Krueger*, 2008 WL 481956 at *3-4; *Sanchez;* 2009 WL 1514435 at *3.

## G.  <u>Plaintiffs' Wage Statement Claim Lacks Predominance</u>

Even if Plaintiffs' underlying claims were certifiable (and they are not), their Section 226(a) claim would not be because it requires that plaintiffs show an actual "injury,"[12] and Plaintiffs cannot show how such injury can be established through "common proof," rather than individual inquiries.  In *Delgado v. New Albertsons, Inc.*, No. SACV 08-0806 DOC (RNBx), slip op. at 15-17 (C.D. Cal. Dec. 15, 2009), the court declined to certify a Rule 23 class alleging a Section

---

[12]  *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136 (2011).

226(a) violation because "it would be necessary to determine whether each class member suffered injury from the wage statements . . . Finding injury for each class member would be a particularly daunting task and would require an individualized determination for each class member."  This case is no different.

**H.**     **There is No Evidentiary Basis for Certification of a Class that Includes the Ontario, Hollywood and Garden Grove Call Centers**

As shown above, the Court should not certify any class in this case because Plaintiffs cannot satisfy the requirements of Rule 23.  Even if Plaintiffs could show that certification was appropriate, however, they present no evidence regarding the conditions at the Hollywood, Garden Grove and Ontario call centers, and thus provide no grounds for certification of a class including those call centers.  Indeed, none of the Plaintiffs worked at the Hollywood or Garden Grove call centers, and thus they cannot speak to the conditions there.

Further, while Gonzales worked at the Ontario call center for a short time in 2008, she has no recollection or useful knowledge regarding the practices there, and is otherwise an inadequate representative.  "The Court must ensure that the litigation is brought by a named Plaintiff who understands and controls the major decisions of the case.  Class counsel may not act 'on behalf of an essentially unknowledgeable client.'"  *Sanchez*, 2009 WL 1514435, *3.  Indeed, with "a party who is not familiar with basic elements on its claim … there is no sense that there is an actual party behind counsel's prosecution of the action."  *Burkhalter Travel Agency v. MacFarms Intern., Inc.*, 141 F.R.D. 144, 153 (N.D. Cal. 1991).  Thus, "courts have refused to allow a person to represent a class when, for example, she 'appeared unaware of even the most material aspects of [her] action.'"  *Id.* at 153-54.

Gonzales is an "unknowledgeable client."  In fact, prior to her deposition she had never even seen her Complaint.  (Gonzales Dep. 21:25-22:3, 39:9-40:2.)  Similarly, she cannot recall if she participated in answering her own

interrogatories and never saw them until the day before her deposition.  (*Id.* at 29:14-22, 30:14-19.)  Moreover, Gonzales is unaware of the status of the litigation, including key events such as consolidation.  (*Id.* at 36:3-22 (stating she is unaware of anything going on with case procedurally at time her counsel was seeking consolidation); 53:15-21, 54:21-55:11 (does not know why she dropped meal and rest break claims); 55:12-21 (discovering at deposition that she dropped rest break claim); 56:13-24, 57:6-24, 58:22-10 (believing dropped wage statement claims were still active); 59:12-60:10 (unaware whether still pursuing certain claims)).  Further, Gonzales has no recollection of the details required to maintain her claims.  (*Id.* at 24:4-17 (consulted co-worker before deposition to find out if class could clock-in before loading other programs (co-worker confirmed they could)); 41:5-43:15 (unsure of log-in policy or what programs she needed to load).  Thus, Gonzales is not an adequate class representative.  *Bodner v. Oreck Direct, LLC*, No. C 06-4756, 2007 WL 1223777, *2 (N.D. Cal. Apr. 25, 2007) (plaintiff not adequate given "plaintiff's undeniable and overwhelming ignorance regarding the nature of this action, the facts alleged, and the theories of relief"); *Burkhalter*, 141 F.R.D. at 154 (denying certification given plaintiffs "alarming unfamiliarity with the suit").

Given the lack of any adequate representative from the Hollywood, Garden Grove and Ontario call centers, and Plaintiffs' lack of evidence regarding the practices there, no class can be certified as to those call centers.

## IV.   CONCLUSION

Accordingly, based on the above, Defendants' respectfully request that the Court deny Plaintiffs' Motion for Class Certification.

WARGO & FRENCH LLP

DATED:  March 5, 2012          By:   s/ J. Scott Carr_____
                                    Michael D. Kabat
                                    Joseph W. Ozmer, II
                                    J. Scott Carr
                                    Attorneys for Defendants

25